## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MIDWAY GAMES INC., *et. al.*, | Case No. 09-10465 (KG) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 250, 251, 269 & 270** |

## MOTION FOR LEAVE TO APPEAL
## UNDER 28 U.S.C. § 158(a)

Pursuant to 28 U.S.C. § 158(a) and Rule 8003(a) of the Federal Rules of

Bankruptcy Procedure, Acquisition Holdings Subsidiary I LLC ("AHS") respectfully files this

motion for leave to appeal from the following final orders of United States Bankruptcy Judge

Kevin Gross, entered in the United States Bankruptcy Court for the District of Delaware (the

"Bankruptcy Court") on April 9, 2009: (a) the final order authorizing the use of cash collateral

(the "Final Cash Collateral Order") [Docket No. 251] and (b) the final order denying AHS's

cross-motion for relief from the automatic stay [Docket No. 250] (the "Order Denying Stay

Relief," and, together with the Final Cash Collateral Order, the "Orders").

AHS believes that an appeal of the Orders is a matter of right under 28 U.S.C.

§ 158(a)(1). Accordingly, AHS only submits this motion out of abundance of caution and only if

the District Court determines that the Orders are interlocutory in nature, thereby requiring leave

to appeal under Bankruptcy Rule 8003(a).

AHS appeals the Final Cash Collateral Order because the Bankruptcy Court erred

by finding that AHS is adequately protected and permitting the Official Committee of Unsecured

Creditors of Midway Games (the "Creditors' Committee") to spend AHS's cash collateral

without limit while failing to make any determination of the value of AHS's non-cash collateral, despite evidence that AHS's cash collateral will be depleted by July 2009 and the value of the non-cash collateral is entirely uncertain. The terms of the Final Cash Collateral Order do not provide adequate protection to AHS. AHS seeks a modification of the Final Cash Collateral Order to adequately protect its cash collateral and to prohibit the Creditors' Committee from using AHS's cash collateral.

In the alternative, AHS appeals from the Order Denying Stay Relief because the Bankruptcy Court erred in finding that AHS is adequately protected by relying on evidence relating to the non-cash collateral that was limited to speculative purchase offers and an outdated appraisal. The Bankruptcy Court did so without making a finding of fact as to the value of this non-cash collateral. In fact, the Bankruptcy Court separately ruled that a sale price of the Debtors' non-cash assets totaling net proceeds of $30 million -- an amount not sufficient to pay AHS's secured claims -- was so uncertain that it could serve as a target asset value for the Debtors' employee incentive compensation program.

### Statement of Necessary Facts

1.    Midway Games, Inc., and its affiliates ("Debtors") are well-known developers of video games in the interactive entertainment software industry. On February 12, 2009, Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), in the Bankruptcy Court for the District of Delaware.

2.    AHS holds a perfected security interest in substantially all of the Debtors' property, including, without limitation, intellectual property, inventory, proceeds, accounts, including accounts receivable, and cash ("cash collateral" as defined in 11 U.S.C. § 363(a)).

3.     AHS acquired its interests in Midway on November 28, 2008, from National Amusements, Inc. ("NAI"), Sumner Redstone, chairman of NAI, and Sumco, Inc., an affiliate of NAI (collectively, the "NAI Parties").   In that transaction, AHS paid the NAI Parties $100,000 in cash and in return acquired from the NAI Parties their Midway common stock, comprising 87.2% of Midway's total issued and outstanding common stock, and a 100% participation interest in two loans extended by NAI to Midway in February 2008.   The loans consist of a $30 million secured loan (the "Secured Facility") and a $40 million unsecured loan (the "Unsecured Facility"), both of which were consummated on February 28, 2008.   NAI assigned the loans under the Secured Facility and the Unsecured Facility to AHS on January 20, 2009, elevating AHS to the status of lender.

4.     Mark Thomas is the sole principal and the indirect owner of AHS.   Prior to the November 28, 2008, transaction, Mr. Thomas had not done business with Sumner Redstone, did not know him, and had never met him.  Mr. Thomas has still not met Sumner Redstone and has done business with the NAI Parties only through AHS.

5.     Although the value of AHS's cash collateral is rapidly decreasing as of the Petition Date, the Debtors' outstanding loan obligations to AHS under the Secured Facility total $28,952,381, plus the unpaid and accrued interest and expenses payable under the Secured Facility.

6.     The Debtors' other creditors include (i) trade creditors; (ii) holders of $75 million of 6% Convertible Senior Notes due in 2025 issued pursuant to the indenture dated September 19, 2005; (iii) holders of $75 million of 7.125% Convertible Senior Notes due in 2026 issued pursuant to the indenture dated May 30, 2006; and (iv) NAI under a $20 million unsecured subordinated loan facility, also consummated on February 28, 2008.

KL2 2600996.5
00426-001\DOCS_DE:147261.1

7.    Contemporaneously with filing their chapter 11 petitions, the Debtors also filed a motion (the "Cash Collateral Motion") seeking an order authorizing the Debtors to continue to use AHS's cash collateral for day-to-day business operations pursuant to a proposed interim order (the "Proposed Interim Order"). The Proposed Interim Order granted adequate protection to AHS pending a final hearing, obligated the Debtors to adhere to a budget, including a budget for the fees of the professionals retained by the Creditors' Committee, and restricted the use of cash collateral for litigation against AHS. AHS consented to the terms of the Proposed Interim Order.

8.    On February 13, 2009, certain noteholders filed a preliminary limited objection to the Cash Collateral Motion, arguing, without support, that AHS was "substantially oversecured" by a sizeable equity cushion. To the contrary, as shown below, the Debtors are rapidly burning through cash, resulting in the rapid erosion of AHS's cash-collateral, and leaving the Debtors with a small, speculative and uncertain "equity cushion" in AHS's non-cash collateral.

9.    The Bankruptcy Court held an interim hearing on the Cash Collateral Motion on February 13, 2009, at which the objecting noteholders made it clear that, in addition to seeking  to deny AHS adequate protection, they sought unlimited access to AHS's cash collateral to investigate and prosecute unsupported and speculative claims against AHS and others. On February 17, 2009, the Court entered an interim order incorporating many aspects of the Debtors' Proposed Interim Order, but excluding others, pending a final hearing.

10.    On February 24, 2009, only 24 hours after its appointment, the Committee served AHS with extensive discovery requests in connection with the final hearing on cash collateral. On February 25, 2009, the Creditors' Committee joined the noteholders' preliminary

4

objection. Responding to the objecting noteholders' and the Creditors' Committee's arguments against granting adequate protection, AHS filed a preliminary limited objection requesting a final order granting the relief requested by the Debtors in the Cash Collateral Motion, and, in the alternative, a cross-motion for relief from the automatic stay.

11.    The Bankruptcy Court held an evidentiary hearing on the Cash Collateral Motion on April 1, 2009, and April 6, 2009. Most of the hearing was taken up by the Creditors' Committee's assertions that Sumner Redstone and his daughter Shari Redstone had breached their fiduciary duties as the ultimate controlling shareholder of the Debtors or as a director, respectively, by causing the NAI parties to make loans to Midway on market terms (or, as the testimony showed, terms that were slightly better – for Midway – than market). The Creditors' Committee alleged that the loans made by the NAI Parties to the Debtors in February 2008 (and sold to AHS in November 2008) were equity or unenforceable.

12.    The Creditors' Committee did not identify how Midway was damaged by either the February 2008 or November 2008 transactions, except to allege that AHS's purchase of Midway stock in the November 2008 transaction had impaired the Debtors' tax net operating loss carryforwards, without any showing why even if such impairment occurred, it results in any claim against AHS or the secured debt AHS acquired. That allegation was refuted by the Debtors' Chief Financial Officer, who testified that the Debtors had roughly the same amount of net operating loss carryforwards after the November 2008 transaction as before. The Creditors' Committee also complained that the November 2008 transaction gave unsecured noteholders a right to "put" their notes to Midway in January 2009 – a right the 6% noteholders would have had, in any event, in April 2009. The Creditors' Committee offered no evidence or theory as to how a January "put", as opposed to an April "put", damaged Midway.

13.     The Creditors' Committee also devoted a substantial amount of time to cross-examining Mr. Thomas about his transfer of his house to his wife during the negotiation of the purchase of the Midway stock and loans from the NAI Parties, without identifying how this transfer was relevant to the issues before the Bankruptcy Court: the adequate protection of AHS's secured loan.[1]

14.     On April 6, 2009, the Bankruptcy Court rendered an oral opinion from the bench, finding AHS adequately protected by an "equity cushion" – that is, an alleged excess of value of cash collateral and non-cash collateral over the more than $28.9 million in secured debt owed to AHS.

15.     On April 9, 2009, the Bankruptcy Court entered the Final Cash Collateral Order and the Order Denying Stay Relief. The Final Cash Collateral Order grants AHS replacement liens to the extent it holds a valid, perfected, nonavoidable security interest in the Debtors' property; directs the Debtors to deposit accrued and unpaid interest under the Secured Facility into a segregated escrow account; and lifts all restrictions on the Debtors' use of cash collateral to pay professional fees and expenses incurred by the Creditors' Committee in investigating and prosecuting claims against AHS, the Debtors' officers and directors, NAI and Mr. Redstone. The Bankruptcy Court denied AHS's cross-motion for relief from the automatic stay in its entirety.

16.     The Bankruptcy Court issued these rulings notwithstanding the Debtors' admission that they will run out of cash by July 2009 – that is, AHS's cash collateral will be

---

[1] In fact, any issues raised by the transfer of Mr. Thomas' house are irrelevant in light of AHS's agreement that (i) interest due and payable under the Secured Facility would be paid into a segregated account in the Debtors' name, subject to AHS's liens, and would only be released upon further order of the Bankruptcy Court; and (ii) AHS's professionals fees would similarly be payable into a segregated account, subject to AHS's liens, and would only be released upon further order of the Bankruptcy Court.

gone. Neither the Debtors nor the Committee offered any expert or other opinion as to the value of non-cash collateral. The only evidence in the record relating to value of the non-cash collateral was an outdated appraisal and testimony that the Debtors hoped to sell the non-cash collateral in late May and that various parties had made offers to buy the non-cash collateral without reducing any of those offers to final agreement.

17.     With cash collateral gone by July 2009, the Debtors would have to sell non-cash collateral at a high enough price to replace the cash collateral – or approximately $30 million. The Debtors' own key employee incentive program sets a $30 million sale as a target for incentive bonuses to management. If $30 million was a certainty or even highly likely, it would not qualify as a target for management bonuses under 11 U.S.C. § 503(c), but $30 million is not a certainty, the Bankruptcy Court found that consummation of such a sale is sufficiently uncertain so as to justify $30 million as a target under section 503(c).

18.     The record therefore provides insufficient basis for any finding of an equity cushion. Given the Debtors' projected exhaustion of cash and given the Debtors' continued accrual of administrative expenses such as payroll, benefits, Key Employees Incentive Program bonuses, professional fees (including the now unlimited budget for the Creditors' Committee's further litigation against AHS), Midway will soon be pushed to administrative insolvency.

## Statement of Questions Presented and of Relief Sought

19.     The questions to be presented on the appeal are as follows:

A.     Whether the Bankruptcy Court erred in finding that AHS was adequately protected when notwithstanding the Court's permitting the Creditors' Committee to spend AHS's cash collateral without limit, the Bankruptcy Court made no findings tied to evidence in the record as to the value of AHS's non-cash collateral and the evidence showed that the Debtors will exhaust their existing cash by July.

B.    Whether the Bankruptcy Court erred in denying AHS's cross-motion for relief from the automatic stay under section 362(d) when (i) the Debtors admitted that AHS's cash collateral was less than the amount of AHS' claim, (ii) the Debtors admitted they would exhaust the balance of AHS' cash collateral by July if they did not sell AHS's non-cash collateral by that time, (iii) evidence relating to the value of non-cash collateral was limited to speculative purchase offers and an outdated appraisal, and (iv) the Bankruptcy Court made no finding of fact as to the value of the non-cash collateral.

20.    The relief sought is an amendment of the Final Cash Collateral Order to provide adequate protection to AHS as proposed in the proposed final cash collateral order attached to the cross-motion for relief from the automatic stay, or in the alternative, an order granting AHS's cross-motion for relief from the automatic stay so that AHS can enforce its rights under state law outside of bankruptcy.

### Statement of Reasons Why an Appeal Should be Granted

21.    AHS believes that an appeal of the Orders is a matter of right under 28 U.S.C. § 158(a)(1). Accordingly, AHS only submits this motion out of abundance of caution and only if the District Court determines that the Orders are interlocutory in nature, thereby requiring leave to appeal under Bankruptcy Rule 8003(a).

22.    Section 158(a) of Title 28 of the United States Code provides that the District Court shall have jurisdiction to hear appeals from final orders, and, with leave of the court, from interlocutory orders, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under 28 U.S.C. § 127. In the bankruptcy context, the Court of Appeals for the Third Circuit has "consistently considered finality in a more pragmatic and less technical sense than in other matters and the concept, for purposes of appellate jurisdiction, should be viewed functionally." *In re Meyertech Corp.*, 831 F.2d 410, 414 (3d Cir. 1987).

23.    The practical reality is that unless an appeal can be lodged now the opportunity for appeal will be entirely lost. There is a very high risk that the Debtors will

8

exhaust AHS's cash collateral within a few short months and leave AHS with solely its non-cash collateral, the value of which is uncertain. *Any* delay will leave AHS without a remedy no matter how meritorious its claims on appeal.

24.    An appeal should be granted because the Bankruptcy Court erroneously found AHS to be adequately protected by the equity cushion of its non-cash collateral. The lack of adequate protection for AHS's non-cash collateral, along with the rapid use of AHS's cash collateral, make it impossible for the Bankruptcy Court to fashion adequate protection without AHS's consent. Thus, since the Bankruptcy Court cannot find that AHS is adequately protected, the Bankruptcy Court erred in not lifting the automatic stay under 11 U.S.C. § 362(d). A creditor with a secured interest is entitled as a matter of right, not just as a matter of discretion, to adequate protection. This right is protected by the Constitution as well as by the Bankruptcy Code. "The right of a secured creditor to the value of its collateral is a property right protected by the Fifth Amendment. Before the plan is confirmed, that property right is protected by the requirement of the [Bankruptcy] Code Section 361 for adequate protection." *In re Townley*, 256 B.R. 697, 700 (Bankr. D.N.J. 2000) (citation omitted).

25.    Here, the Bankruptcy Court erred by failing to make any finding based on the evidence in the record that AHS is adequately protected, and by granting the Creditors' Committee unlimited access to the Debtors' cash to pay for its fees and expenses even though the cash is AHS's cash collateral and the Debtors will run out of cash in July 2009.

26.    It makes no difference that the Debtors possess non-cash collateral – with respect to the value of which the Bankruptcy Court failed to make any findings – that may provide an equity cushion. Where the value of the non-cash collateral is uncertain and the risk is high that cash collateral will be depleted, the existence of non-cash collateral is not adequate

9

protection. *See In re Stoney Creek Technologies, LLC*, 364 B.R. 882, 891 (Bankr. E.D. Pa 2007) (no adequate protection where cash flow projections showed cash would soon be exhausted and value of equity cushion provided by real property was speculative because the appraiser could find no appropriate comparables for valuating property and buildings). Moreover, "the existence of a small equity cushion does not assure protection; the cushion must be sufficiently substantial to assure that the decline in value will not affect the secured claim." 3 Collier on Bankruptcy § 361.03[1] (citing *Kost v. First Interstate Bank of Greybill (In re Kost)*, 102 B.R. 829 (D. Wyo. 1989) (collecting cases; equity cushion of 20% or more generally held adequate while equity cushion of under 11% generally held insufficient)).

27.    The Bankruptcy Court failed to make specific findings concerning the purported equity cushion and why it is large enough to provide adequate protection. In fact, the uncertainty of the non-cash collateral's value was clear and is demonstrated in the record established below. The evidence consisted of an out-dated and flawed appraisal of one of the Debtors' video game franchises, and a few recent purchase bids, none of which had, as of April 1, been reduced to a definitive writing.

28.    In short, the Bankruptcy Court erred in failing to provide adequate protection and denying the Cross-Motion for Stay Relief. To the contrary, the Bankruptcy Court's Orders actually *increase* the risk that the Debtors will deplete AHS's cash collateral, without reckoning with the fact that the value of the non-cash collateral is entirely speculative and, in any case, too small to provide a sufficient equity cushion.

### The Orders Appealed From

29.    Annexed as Exhibit A is a copy of the Final Cash Collateral Order, entered by the Bankruptcy Court on April 9, 2009.

KL2 2600996.5
00426-001\DOCS_DE:147261.1

30. Annexed as Exhibit B is a copy of the Order Denying Stay Relief, entered by the Bankruptcy Court on April 9, 2009.

### Conclusion

31. The Bankruptcy Court's Orders wholly disregard the dire condition of the Debtors' cash reserves and the speculative and uncertain nature of the value of the non-cash collateral. If the Orders are allowed to stand, AHS's cash collateral will be consumed without adequate protection. For these reasons, the Final Cash Collateral Order must be modified to prevent the unbridled depletion of AHS's cash collateral and to provide real adequate protection for AHS's cash collateral and non-cash collateral. In the alternative, the automatic stay must be lifted to allow AHS to exercise its rights under state law.

Dated: April 20, 2009

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones, Esq.
Michael R. Seidl, Esq.
Timothy P. Cairns, Esq.
919 North Market Street
P.O. Box 8705
Wilmington, DE 1899-8705
Tel: (302) 652-4100

and

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Thomas Moers Mayer, Esq. (admitted *pro hac vice*)
Timothy P. Harness, Esq. (admitted *pro hac vice*)
Gordon Z. Novod, Esq. (admitted *pro hac vice*)
1177 Avenue of the Americas
New York, New York 10036
Tel: (212) 715-9100

Attorneys for Acquisition Holdings Subsidiary I
LLC

11

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MIDWAY GAMES INC., *et al.*,[1] | ) | Case No. 09-10465 (KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Related Docket Nos. 250, 251, 269 & 270** |

**Objection Deadline: May 4, 2009 at 4:00 p.m. Eastern time**

## NOTICE OF ACQUISITION HOLDINGS SUBSIDIARY I LLC'S
## MOTION FOR LEAVE TO APPEAL UNDER 28 U.S.C. § 158(a)

TO:    (i) the Office of the United States Trustee; (ii) the Debtors; (iii) counsel for the Debtors; (iv) counsel for the Official Committee of Unsecured Creditors; and (v) any party requesting notice pursuant to Bankruptcy Rule 2002.

Acquisition Holdings Subsidiary I LLC ("AHS") filed the *Motion for Leave to Appeal Under 28 U.S.C. § 158(a)* (the "Motion"), attached hereto, with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801 (the "Bankruptcy Court").

OBJECTIONS AND RESPONSES TO THE MOTION, IF ANY, MUST BE IN WRITING AND FILED WITH THE BANKRUPTCY COURT NO LATER THAN **4:00 P.M. PREVAILING EASTERN TIME ON MAY 4, 2009.**

---

[1]    The Debtors are Midway Games Inc., Midway Home Entertainment Inc., Midway Amusement Games, LLC, Midway Interactive Inc., Surreal Software Inc., Midway Studios – Austin Inc., Midway Studios – Los Angeles Inc., Midway Games West Inc., Midway Home Studios Inc., and Midway Sales Company, LLC.

**PLEASE TAKE FURTHER NOTICE** that objections or responses to the

Motion, if any, must also be served so that they are received by no later than May 4, 2009 at 4:00

p.m. prevailing Eastern time, by: (i) counsel to AHS: (a) Laura Davis Jones, Esq., Pachulski

Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington,

Delaware 19899-8705 (Courier 19801) and (b) Timothy P. Harkness, Esq., Gordon Z. Novod,

Esq., Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of Americas, New York, New York

10036; (ii) counsel to the Debtors: Michael D. DeBaecke, Esq., Blank Rome LLP, 1201 Market

Street, Wilmington, Delaware 19801 and (b) Marc E. Richards, Esq., Pamela E. Flaherty, Blank

Rome LLP, The Chrysler Building, 405 Lexington Avenue, New York, New York 10174; (iii)

the Office of the United States Trustee: (a) David Buchbinder, Esq., Office of the United States

Trustee, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Lockbox 35,

Wilmington, Delaware 19801; and (iv) counsel to the Official Committee of Unsecured

Creditors: (a) Marcos Alexis Ramos, Esq., Richards Layton & Finger, P.A., One Rodney Square,

P.O. Box 551, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE** THAT IF YOU FAIL TO RESPOND IN

ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF

REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.


Dated:  April 2o, 2009

                                    PACHULSKI STANG ZIEHL & JONES LLP

                                    _____
                                    Laura Davis Jones (Bar No. 2436)
                                    Michael R. Seidl (Bar No. 3889)
                                    Timothy P. Cairns (Bar No. 4228)
                                    919 N. Market Street, 17th Floor
                                    P.O. Box 8705
                                    Wilmington, DE 19899-8705 (Courier 19801)
                                    Telephone: (302) 652-4100
                                    Facsimile:  (302) 652-4400
                                    Email: ljones@pszjlaw.com
                                            tcairns@pszjlaw.com

                                    and

                                    KRAMER LEVIN NAFTALIS & FRANKEL LLP
                                    Timothy P. Harkness, Esq. (*pro hac vice* pending)
                                    Gordon Z. Novod, Esq. (admitted *pro hac vice*)
                                    1177 Avenue of Americas
                                    New York, New York 10036
                                    Telephone:  (212) 715-9100
                                    Facsimile:  (212) 715-8000
                                    Email: tharkness@kramerlevin.com
                                            gnovod@kramerlevin.com

                                    Counsel to Acquisition Holdings Subsidiary I LLC

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **MIDWAY GAMES, INC., et al.,**[1] | **Case No. 09-10465 (KG)** |
| **Debtors.** | **Re: Docket No. 14** |

## FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL, GRANTING ADEQUATE PROTECTION AND GRANTING RELATED RELIEF

Upon consideration of the *Motion of the Debtors Pursuant to 11 U.S.C. §§ 361 and 363 and Rule 4001 of the Federal Rules of Bankruptcy Procedure for Entry of Interim and Final Orders: (A) Authorizing the Debtors to Use Cash Collateral; (B) Determining Adequate Protection Pending Final Hearing; (C) Scheduling Final Hearing; and (D) Granting Related Relief* [Docket No. 14] (the "Motion") filed by the above-captioned debtors and debtors in possession (the "Debtors"); the Court having, considered the objections to the Motion filed by the Official Committee of Unsecured Creditors (the "Committee") [Docket Nos. 88 and 216] and others [Docket Nos. 19 and 100] (collectively, the "Objections"), having conducted evidentiary hearings on the Motion and the Objections on April 1, 2009 and April 6, 2009 (the "Hearings") and having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and it appearing that due and adequate notice of the Motion has been given, based upon the

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: Midway Games Inc., a Delaware corporation (6244); Midway Home Entertainment Inc., a Delaware corporation (3621); Midway Amusement Games, LLC, a Delaware limited liability company (4179); Midway Interactive Inc., a Delaware corporation (6756); Surreal Software Inc., a Washington corporation (1785); Midway Studios - Austin Inc., a Texas Corporation (2584); Midway Studios - Los Angeles Inc., a California corporation (1153); Midway Games West Inc., a California corporation (8756); Midway Home Studios Inc., a Delaware corporation (8429); and Midway Sales Company, LLC, a Delaware limited liability company.

LA1:#6402199
RLF1-3385570-2

substantial evidence introduced and arguments made at the Hearings, and for all of the reasons set forth by the Court on the record at the Hearings,

### IT IS HEREBY ORDERED THAT:

1.    The Debtors are authorized to use Cash Collateral (as that term is defined in the Motion and within the meaning set forth in 11 U.S.C. § 363(a)).

2.    To the extent that the alleged prepetition lender, Acquisition Holdings Subsidiary I LLC ("AHS") holds a valid, perfected, nonavoidable security interest in property of the Debtors that AHS asserts to constitute its collateral (the "Prepetition Collateral"), AHS shall receive a postpetition replacement lien and security interest in the same type of property as the Prepetition Collateral that is created or acquired after the Petition Date and any and all proceeds, products, cash, distributions, checks, negotiable instruments, securities (debt or equity) and other cash equivalents now or hereafter received by the Debtors in respect thereof (the "Replacement Lien"). The Replacement Lien shall have the same validity and priority as AHS' alleged liens and security interests in the Prepetition Collateral. The Replacement Liens shall secure an amount equal to the aggregate diminution in value of the Prepetition Collateral from the Petition Date resulting from the sale, lease or use by the Debtors of Cash Collateral and any other Prepetition Collateral and to which AHS is entitled to receive adequate protection under the Bankruptcy Code. Notwithstanding anything to the contrary in this Order, AHS shall not have a Replacement Lien on any claim of the estates or proceeds thereof that arises out of, or relates to (a) chapter 5 of the Bankruptcy Code or any similar state law, (b) any transaction by and between National Amusements, Inc. ("NAI") or any of its affiliates, insiders or shareholders on the one hand, and any of the Debtors on the other hand, (c) transactions that led to AHS, and/or any of AHS's affiliates, insiders or shareholders, becoming the majority owner of the

Debtors and the owner of claims against the Debtors previously held by NAI and (d) any action or omission of any insider or affiliate of the Debtors including, without limitation, NAI, AHS, or any of their respective affiliates, insiders or shareholders, in connection with any of the Debtors. The Court retains the ability to modify the scope of the Replacement Lien to the extent necessary to prevent an unjust enrichment to AHS or its affiliates or assignees, and the rights of all parties-in-interest in connection with any request for such modification are reserved.

3.    Subject to the provisions of paragraph 2 above, this Order shall be sufficient and conclusive evidence of the creation, validity, enforceability, perfection, and priority of the Postpetition Liens, without the necessity of filing or recording any financing statement or other instrument or document, or taking any other act which may otherwise be required under state or federal law, rule or regulation of any jurisdiction to validate or perfect the Postpetition Liens or to entitle AHS to the priority granted herein. In addition to and without limiting the foregoing, the Debtors shall execute such instruments as AHS may so request to evidence, perfect, enforce or protect the priority of the Postpetition Liens as a matter of non-bankruptcy law, and AHS is hereby authorized to file financing statements with respect to the Postpetition Liens in any recording office. All filing officers are hereby directed to accept a certified copy of this Order for filing and recording in lieu of a UCC financing statement and no such filing or recording of any instrument otherwise necessary or desirable to evidence, perfect, enforce or protect the priority of the Postpetition Liens under non-bankruptcy law shall constitute a violation of the automatic stay or otherwise act to limit the terms of this Order.

4. The Debtors shall continue to deposit on a quarterly basis interest into a separate, interest bearing escrow account maintained in the name of the Midway Games, Inc., in an amount equal to accrued and unpaid interest at the non-default rate under the Prepetition Facility. All funds deposited into the escrow account shall be subject to any lien of AHS; provided, however, that no funds deposited into such account shall be paid to AHS absent further order of the Court; and provided further, that all parties' rights are reserved with respect to such funds.

5. AHS reserves all rights to reasonably request such financial and operating reports and access to all other books and records of the Debtors (the "Reports") as the Debtors have provided prior to the Petition Date pursuant to the terms of the Prepetition Facility (as defined in the Motion). AHS further reserves all rights to request (i) reasonable access to or copies of the financial records of the Debtors, (ii) reasonable access to the Debtors' premises to inspect the Debtors' assets and operations, and (iii) reasonable access to all information in the possession or control of the Debtors; (iv) reasonable access to the Debtors' personnel and advisors, concerning all matters related to the Debtors, including, without limitation, matters relating to the sale of any Prepetition Collateral in the ordinary course of business of the Debtors.

6. The Debtors shall not reimburse or otherwise pay any fees or expenses incurred directly or indirectly by or on behalf of AHS, or any insider or affiliate of AHS, without a further order of the Court.

7. The Debtors' use of Cash Collateral is not conditioned upon any restriction on the payment of the professional fees and expenses of the Committee that are allowed by the Court after notice and a hearing or as otherwise authorized for payment in

compliance with any order of the Court entered with respect to the payment of professional fees and expenses.

        8.      The Committee is authorized to investigate, assert and/or prosecute on behalf of the Debtors' estates any and all claims of the estates against any party that arise out of, or relate to (a) any transaction by and between NAI or any of its affiliates or shareholders on the one hand, and any of the Debtors on the other hand, (b) transactions that led to AHS, and/or any of AHS's affiliates, insiders or shareholders, becoming the majority owner of the Debtors and the owner of claims against the Debtors previously held by NAI and (c) any action or omission of any insider or affiliate of the Debtors including, without limitation, NAI, AHS, or any of their respective affiliates, insiders or shareholders, in connection with any of the Debtors.

        9.      AHS's right to request modification of this Order at a later date and the rights of other parties-in-interest in connection with any such request are hereby reserved.

        10.     This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

Dated: April 9, 2009
      Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

)
)
)

**Chapter 11**

**MIDWAY GAMES, INC., *et al.*,**[1]

)
)
)

**Case No. 09-10465 (KG)**
**(Jointly Administered)**

Debtors.

)
)
)

Re: Docket Nos. 14 and 100

## ORDER DENYING ACQUISITION HOLDINGS SUBSIDIARY I LLC'S CROSS MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Upon consideration of *Acquisition Holdings Subsidiary I LLC's (I) Preliminary Limited Objection to the Debtors' Motion for Authorization to Use Cash Collateral and (II) in the Alternative, Cross Motion for Relief From the Automatic Stay* [Docket No. 100] (the "Cross Motion") filed by Acquisition Holdings Subsidiary I LLC ("AHS"); and the Court having conducted hearings on the Cross Motion on April 1, 2009 and April 6, 2009 (the "Hearings"); and the Court having jurisdiction to consider the Cross Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that due and adequate notice of the Cross Motion has been given, and after due deliberation and sufficient cause appearing therefore,

### IT IS HEREBY ORDERED THAT:

1.      The Cross Motion is DENIED in its entirety.

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: Midway Games Inc., a Delaware corporation (6244); Midway Home Entertainment Inc., a Delaware corporation (3621); Midway Amusement Games, LLC, a Delaware limited liability company (4179); Midway Interactive Inc., a Delaware corporation (6756); Surreal Software Inc., a Washington corporation (1785); Midway Studios - Austin Inc., a Texas Corporation (2584); Midway Studios - Los Angeles Inc., a California corporation (1153); Midway Games West Inc., a California corporation (8756); Midway Home Studios Inc., a Delaware corporation (8429); and Midway Sales Company, LLC, a Delaware limited liability company.

RLF1-3384653-2

Date 4/9/09
Docket # 250

2.    This Court shall retain jurisdiction over any and all matters arising

from or related to the implementation or interpretation of this Order.

Dated: **APRIL 9**, 2009
Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

2

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MIDWAY GAMES INC., *et. al.*, | Case No. 09-10465 (KG) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. ____** |

**ORDER GRANTING MOTION FOR LEAVE TO APPEAL**
**UNDER 28 U.S.C. § 158(a)**

Upon the motion of Acquisition Holdings Subsidiary I LLC ("AHS") pursuant to 28 U.S.C. § 158(a) and Rule 8003(a) of the Federal Rules of Bankruptcy Procedure for leave to appeal from the following final orders of United States Bankruptcy Judge Kevin Gross, entered in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on April 9, 2009: (a) the final order authorizing the use of cash collateral (the "Final Cash Collateral Order") [Docket No. 251] and (b) the final order denying AHS's cross-motion for relief from the automatic stay [Docket No. 250] (the "Order Denying Stay Relief," and, together with the Final Cash Collateral Order, the "Orders."); and the Court having reviewed the Motion and all responses to the Motion; and due and proper notice of the Motion having been given under the circumstances; and after due deliberation, and good and sufficient cause appearing therefore, it is hereby

ORDERED, that the Motion is granted; and it is further

ORDERED, that AHS is granted leave to immediately appeal the Final Cash Collateral Order and the Order Denying Stay Relief; and it is further

ORDERED that this Court shall retain jurisdiction over all matters arising from or related to the implementation of this Order.

Dated: _____, 2009

_____
United States District Court Judge

2

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| MIDWAY GAMES INC., *et al.*,[1] | Case No. 09-10465 (KG) |
| Debtors. | (Jointly Administered) |

## CERTIFICATE OF SERVICE

I, Timothy P. Cairns, hereby certify that on the 2o˘ day of April, 2009, I caused

a copy of the following documents to be served on the individuals on the attached service list in

the manner indicated:

**Notice of Motion for Leave to Appeal Under 28 U.S.C. § 158(a);**

**Motion for Leave to Appeal Under 28 U.S.C. § 158(a); Exhibits A and B;**

**[Proposed] Order Granting Motion for Leave to Appeal Under 28 U.S.C. §
158(a).**

Timothy P. Cairns (Bar No. 4228)

---

[1]    The Debtors are Midway Games Inc., Midway Home Entertainment Inc., Midway Amusement Games,
LLC, Midway Interactive Inc., Surreal Software Inc., Midway Studios – Austin Inc., Midway Studios – Los Angeles
Inc., Midway Games West Inc., Midway Home Studios Inc., and Midway Sales Company, LLC.

Midway Games, Inc. / **Acquisitions**
**Holdings Subsidiary I, LLC**
**2002 Service List**
Case No. 09-10465 KG)
Document No. 145069
07 – Hand Delivery
38 – First Class Mail

(Counsel for Acquisitions Holdings
Subsidiary I, LLC)
Laura Davis Jones
Timothy P. Cairns
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, DE  19899

**Hand Delivery**
(United States Trustee)
David Buchbinder, Esquire
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 North King Street, Suite 2207
Lockbox 35
Wilmington, DE  19801

**Hand Delivery**
(Copy Service)
Parcels, Inc.
Vito I. DiMaio
230 N. Market Street
Wilmington, DE  19801

**Hand Delivery**
(Counsel to the Debtors)
Michael D. DeBaecke
Blank Rome LLP
1201 Market Street
Wilmington, DE  19802

**Hand Delivery**
(Counsel for Official Committee of
Unsecured Creditors)
Marcos Alexis Ramos, Esquire
Richards Layton & Finger, PA
One Rodney Square
PO Box 551
Wilmington, DE  19899

**Hand Delivery**
Ellen W. Slights
U. S Attorney's Office
1007 North Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046

**Hand Delivery**
(Counsel for PREEF Domain, L.P.)
Karen C. Bifferato, Eaquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
PO Box 2207
Wilmington, DE  19899

**Hand Delivery**
(Counsel for Tigon Studios, Inc.)
Frederick B. Rosner, Esquire
Messana Rosner & Stern LLP
1000 N. West Street, Suite 1200
Wilmington, DE  19801

**First Class Mail**
(Counsel to the Debtors)
Marc E. Richards
Pamela E. Flaherty
The Chrysler Building
405 Lexington Avenue
New York, NY 10174

**First Class Mail**
(Counsel for Acquisitions Holdings
Subsidiary I, LLC)
Gordon Z. Novod, Esquire
Kremer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

**First Class Mail**
Peter Abruzzese, Esquire
Peter Kolevzon, Esquire
Gordon Novod, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036

**First Class Mail**
Matt Booty
Ryan O'Desky
Midway Games Inc.
2704 West Roscoe St.
Chicago, IL 60618

**First Class Mail**
Jeffrey Sechrest
Barry Ridings
Lazard Freres & Co.
30 Rockefeller Plaza
New York, NY 10020

**First Class Mail**
Frederick Kanner
Timothy Karcher
Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, NY 10019

**First Class Mail**
Chris Nicholls
Bruce Benson
FTI Consulting
3 Times Square, 10th Floor
New York, NY 10036

**First Class Mail**
Gregory A. Bray
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005

**First Class Mail**
David B. Zolkin
Milbank, Tweed, Hadley & McCloy LLP
601 South figueroa St., 30th Floor
Los Angeles, CA 90017

**First Class Mail**
Larry Lattig
Mesirow Financial Consulting, LLC
2828 Routh Street, Suite 650
Dallas, Texas 75201

**First Class Mail**
Daniel C. McElHinney
Epiq Systems Bankruptcy Solutions
757 Third Avenue
New York, NY 10017

**First Class Mail**
(Counsel to Wells Fargo)
James S. Carr, Esquire
Gabrielle Rohwer, Esquire.
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

**First Class Mail**
Secretary of State
Division of Corporations
Franchise Tax
P.O. Box 7040
Dover, DE 19903

**First Class Mail**
Secretary of Treasury
P.O. Box 7040
Dover, DE 19903

**First Class Mail**
Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114-0326

**First Class Mail**
Secretary of Treasury
15th & Pennsylvania Avenue, N.W.
Washington, DC 20220

**First Class Mail**
Attn: Insolvency
District Director
Internal Revenue Service
31 Hopkins Plaza, Room 1150
Baltimore, MD 21201

**First Class Mail**
Attn: Insolvency
Internal Revenue Service
1352 Marrows Road, 2nd Floor
Newark, DE 19711-5445

**First Class Mail**
Mark Schonfeld, Esq.
Regional Director
Securities & Exchange Commission
New York Regional Office
3 World Financial Center, Suite 400
New York, NY 10281-1022

**First Class Mail**
Michael A. Berman, Esq.
Securities & Exchange Commission
Office of General Counsel-Bankruptcy
100 F Street, N.E.
Washington, DC 20549

**First Class Mail**
(The Seaport Group LLC)
Scott Friedberg
The Seaport Group, LLC
360 Madison Avenue, 22nd Floor
New York, NY 10017

**First Class Mail**
(Counsel for Oracle USA, Inc.)
Shawn M. Christianson, Esquire
Buchalter Nemer, A Professional
Corporation
333 Market Street, 25th Floor
San Francisco, CA 94105-2126

**First Class Mail**
(Counsel for Dallas County)
Elizabeth Weller, Esquire
Linebarger Goggan Blair & Sampson, LLC
2323 Bryan Street, Suite 1600
Dallas, TX 75201

**First Class Mail**
(Counsel for Crystal Pier Partners, L.P.)
Michael D. Breslauer, Esquire
Solomon Ward Seidenwurm & Smith
401 B Street, Suite 1200
San Diego, CA 92101

**First Class Mail**
(J. Scott Douglass)
J. Scott Douglass
909 Fannin, Suite 1800
Houston, TX 77010

**First Class Mail**
(Member, Committee of Unsecured
Creditors)
James R. Lewis
Wells Fargo Bank, N.A.
45 Broadway, 17th Floor
New York, NY 10006

**First Class Mail**
(Member, Committee of Unsecured
Creditors)
Adam J. Chill
c/o Highbridge Capital Management LLC
9 West 57th Street, 27th Floor
New York, NY 10019

**First Class Mail**
(Member, Committee of Unsecured
Creditors)
Harvey E. Benjamin
NBA Properties, Inc.
645 Fifth Avenue
New York, NY  10502

**First Class Mail**
(Member, Committee of Unsecured
Creditors)
Jay Phillip Obernolte
Farsight Technologies, Inc.
611 Spruce Rd.
Big Bear Lake, CA  93215-2895

**First Class Mail**
(Member, Committee of Unsecured
Creditors)
William H. Hogan
Multi Packaging Solutions, Inc.
150 East 52nd Street
New York, NY  10022

**First Class Mail**
(Counsel for PREEF Domain, L.P.)
Jennifer A. Gehrt, Esquire
Barbee & Gehrt, L.L.P.
1201 Main Street, Suite 1910
PO Box 224409
Dallas, TX  75222-4409

**First Class Mail**
(Counsel for Microsoft Corporation and its
affiliates)
Michael J. Gearin, Esquire
K&L Gates LLP
925 Fourth Avenue, Suite 2900
Seattle, WA  98104-1158

**First Class Mail**
(Counsel for Richardson Independent
School District)
Elizabeth Banda, Esquire
Perdue, Brandon, Fielder, Collins & Mott,
L.L.P.
PO Box 13430
Arlington, TX  76094-0430

**First Class Mail**
(Counsel for Epic Games, Inc.)
John Burns, Esquire
Hunton & Williams LLP
421 Fayetteville Street, Suite 1400
Raleigh, NC  27601

**First Class Mail**
(Counsel for Epic Games, Inc.)
Michael G. Wilson, Esquire
Jason W. Harbour, Esquire
Hunton & Williams LLP
951 East Byrd Street
Richmond, VA  23219

**First Class Mail**
(Counsel for Warner Bros. Interactive
Entertainment, Inc.)
Wayne M. Smith, Esquire
Warner Bros. Entertainment Inc.
4000 Warner Blvd.
Bldg. 156, Room 5158
Burbank, CA  91522

**First Class Mail**
(Counsel to Jones Lang)
Joseph D. Frank
Frank/Gecker LLP
325 North LaSalle Street, Suite 625
Chicago, IL  60654

**First Class Mail**
(Counsel for Microsoft Licensing, GP)
Joseph E. Schickich, Jr., Esquire
Riddell Williams P.S.
1001  4th Avenue, Suite 4500
Seattle, WA  98154