## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-------------------------------------------------------x

In re:

MIDWAY GAMES INC., et. al.

                              Debtors.

:
:
:
:
:
:
:
:
:
:
:

Chapter 11 Case No.

09-10465 (KG)

(Jointly Administered)

**Re: Docket No. 270**

-------------------------------------------------------x

## OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO ACQUISITION HOLDINGS SUBSIDIARY I LLC'S MOTION FOR LEAVE TO APPEAL UNDER 28 U.S.C. § 158(a)

       The Official Committee of Unsecured Creditors (the "Committee") in the bankruptcy cases (the "Bankruptcy") of the above-captioned debtors[1] (the "Debtors" or "Midway") hereby files this objection (the "Objection") to Acquisition Holdings Subsidiary I LLC's ("AHS") *Motion for Leave to Appeal Under 28 U.S.C. § 158(a)* [Docket No. 270] (the "Motion"), and in support thereof, respectfully states as follows:

### PRELIMINARY STATEMENT

       1.      The Midway Bankruptcy arises out of a bizarre series of transactions during 2008 that resulted (late in November 2008) in a previously unknown individual named Mark E. Thomas (together with AHS and another related entity, the "Thomas Entities") claiming to own 87% of the equity and $70 million in debt ($30 million of which he claims is first priority

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: Midway Games Inc., a Delaware corporation (6244); Midway Home Entertainment Inc., a Delaware corporation (3621); Midway Amusement Games, LLC, a Delaware limited liability company (4179); Midway Interactive Inc., a Delaware corporation (6756); Surreal Software inc., a Washington corporation (1785); Midway Studios – Austin Inc., a Texas corporation (2584); Midway Studios – Los Angeles Inc., a California corporation (1153); Midway Games West Inc., a California corporation (8756); Midway Home Studios Inc., a Delaware corporation (8429); and Midway Sales Company, LLC, a Delaware limited liability company.

secured debt) from the media mogul Sumner M. Redstone ("Redstone") for only $100,000 (the "Redstone-Thomas Transaction").  This Appeal concerns an Order of the Bankruptcy Court (entered after an extensive evidentiary hearing) authorizing the Debtors' use of cash collateral and providing the Thomas Entities with replacement liens (to the extent that their prepetition liens are valid, perfected, and non-avoidable and to the extent of any dimunition in value caused by the use, sale, or lease of such collateral) and related relief as adequate protection under 11 U.S.C. § 363(a) [Docket No. 251] (the "Cash Collateral Order").  The Thomas Entities also seek to appeal a related order denying their motion for relief from the automatic stay to foreclose on the Debtors' assets [Docket No. 250] (together with the Cash Collateral Order, the "Orders").

2.      Because the Orders at issue are interlocutory, and because the Motion does not satisfy the statutory requirements set forth under 28 U.S.C. § 1292(b), the Committee requests that this Court deny the Thomas Entities' Motion for lack of jurisdiction.

## PROCEDURAL BACKGROUND

3.      On February 12, 2009, Midway, a producer of videogames, filed voluntary Chapter 11 bankruptcy petitions.  Along with the petitions, Midway filed a *Motion to Approve Use of Cash Collateral and for Entry of Interim and Final Orders: (A) Authorizing The Debtors To Use Cash Collateral; (B) Granting Adequate Protection Pending Final Hearing; (C) Scheduling Final Hearing; and (D) Granting Related Relief* [Docket No. 14] (the "Cash Collateral Motion"), seeking, among other relief, that the Court enter an order (i) prohibiting any party from investigating or challenging the Thomas Entities' claims (by, among other provisions, restricting the fees and expenses permitted for investigation by the Committee to $25,000), (ii) stipulating to the validity, extent, and priority of the Thomas Entities' claims and liens, and (iii) guaranteeing that the Thomas Entities receive interest payments (each of which would have

represented a windfall return on his $100,000 investment), and recover legal fees and costs for the budgeted period.

4.      On February 13, 2009, certain holders of Midway's promissory notes ("Noteholders") filed an objection to the Cash Collateral Motion [Docket No. 19] (the "Noteholders' Objection").  The Noteholders argued that a series of questionable prepetition transactions that occurred, including (i) a February 2008 transaction between Midway and Redstone, Midway's controlling shareholder, and Redstone's owned and controlled entities National Amusements, Inc. ("NAI") and Sumco, Inc. (together with Redstone and NAI, the "Redstone Parties") and (ii) the November 2008 Redstone-Thomas Transaction discussed above, raised red flags about the validity, extent, and priority of the Thomas Entities' claims.  The Noteholders argued that the highly unusual nature of these transactions affected the level of protection that the Thomas Entities deserved, or needed, under an order authorizing the use of Midway's cash.  Furthermore, the Noteholders contended that the Thomas Entities were materially oversecured based upon Midway's cash position and the value of Midway's other assets.

5.      After oral argument at the first day hearing on the Cash Collateral Motion, the Court entered an *Interim Order Authorizing Use of Cash Collateral, Granting Adequate Protection, and Granting Related Relief* [Docket No. 41] (the "Interim Order"), pursuant to which, among other provisions (i) Midway was to escrow during the period covered by the Interim Order, any interest to which the Thomas Entities might otherwise be entitled under their purported secured loan and (ii) parties in interest, including the Committee, once appointed, were authorized to investigate claims that might exist against the Redstone Parties, the Thomas Entities and others arising from the curious prepetition transactions that had taken place.  The

Court expressed a need to be able to properly evaluate the Thomas Entities' adequate protection demands in light of the assertions that were made by the Noteholders at a subsequent hearing on the Cash Collateral Motion, and welcomed the suggestion by the Noteholders that an investigation of the facts underlying the assertions would take place.

6.      On February 23, 2009, the Office of the United States Trustee appointed the Committee.  On February 25, 2009, the Committee filed a joinder to the Noteholders' Objection on February 25, 2009 [Docket No. 88].

7.      On February 27, 2009, the Thomas Entities filed *Acquisition Holdings Subsidiary I LLC's (I) Preliminary Limited Objection to the Debtors' Motion for Authorization to Use Cash Collateral and (II) in the Alternative, Cross-Motion for Relief from the Automatic Stay* [Docket No. 100] (the "Cross-Motion").

8.      Over the ensuing weeks, the Committee and the Thomas Entities conducted expedited, but extensive, discovery.  Prior to the scheduled April 1, 2009 evidentiary hearing date, each of the Committee and the Thomas Entities filed further briefs in support of their respective positions [Docket Nos. 216, 219, 241 and 247].

9.      On April 1 and 6, 2009, the Court conducted evidentiary hearings on the Cash Collateral Motion.  The Court considered over nine hours of (i) live testimony from Ryan O'Desky (Midway's Chief Financial Officer) and Mark E. Thomas and (ii) video deposition testimony from, among others, Tad Jankowski (a corporate designee/representative of NAI), Shari E. Redstone (Redstone's daughter, former Chairman of the Midway Board, and current President of NAI), and Redstone himself.  The Court also examined over 90 documentary exhibits.

10.    On April 6, 2009, based on all of the evidence presented in connection

with the parties' briefs and arguments, the Court expressly found, *inter alia*, that:

- "[T]he fiduciaries did not act, at least on the present record, in a manner in which they're expected to act."[2]

- "[T]he Committee has made a strong prima facie case upon which the Court can permit the litigation [against the Thomas Entities for aiding and abetting breach of fiduciary duty, fraudulent conveyance, unjust enrichment, re-characterization, and equitable subordination] to proceed [...]. [T]hat certainly clouds the motion for the use of cash collateral that was presented to the Court. I think the evidence presented certainly establishes that this is a transaction, a series of transactions, and a course of conduct which creates serious issues."[3]

- "The specific issues on the motion for cash collateral, which are again impacted by the evidence received, are three-fold [...] [*First,*] I believe that [the Thomas Entities] ha[ve] adequate protection, mainly that equity cushion, that cash cushion, I will permit that to proceed, the payment of the interest into escrow until such time as it is brought to my attention by motion that the continued payment of interest, even into escrow, imperils the company [...] [*Second,*] based on the evidence that I have heard today, my very serious concerns, I am not going to permit the payment of either Mr. Thomas's or [AHS's] attorney's fees into escrow [...] [*Third,*] I am surely not going to limit the carve-out for Committee counsel because on one hand, to grant them standing, and on the other hand, to deny them their fees would [...] make [it] a futile act by this Court [...]."[4]

11.    On April 9, 2009, the Court entered the Orders. Neither Order was final—

they provide, in relevant part:

- "To the extent that the alleged prepetition lender, [the Thomas Entities hold] a valid, perfected, nonavoidable security interest, [the Thomas Entities] shall receive a postpetition replacement lien and security interest [...] (the "Replacement Lien"). [...] The Court <u>retains the ability to modify the scope of the Replacement Lien to the extent necessary to prevent an unjust enrichment to [the Thomas Entities] or [their] affiliates or assignees, and the rights of all parties-in-interest in connection with any request for such modification are reserved</u>."[5]

- "All funds deposited into the escrow account shall be subject to any lien of [the Thomas Entities]; <u>provided, however,</u> that no funds deposited into such account shall be paid to

---

[2] Apr. 6, 2009 Hrg. Tr. at 74:15-17. Copies of relevant excerpts from the April 1 and 6, 2009 hearings are attached hereto as Exhibit A.

[3] *Id.* at 75:24-76:7.

[4] *Id.* at 76:19-77:15 (emphasis added).

[5] Cash Collateral Order, ¶2 (emphasis added).

[the Thomas Entities] absent further order of the Court; and provided further, that all parties' rights are reserved with respect to such funds."[6]

- "The Debtors shall not reimburse or otherwise pay any fees or expenses incurred directly or indirectly by or on behalf of [the Thomas Entities], or any insider or affiliate of [the Thomas Entities], without a further order of the Court."[7]

- "[The Thomas Entities'] right to request modification of this Order at a later date and the rights of other parties-in-interest in connection with any such request are hereby reserved."[8]

The underlined language in the Cash Collateral Order demonstrates that the Court's rulings were conditioned on, and contemplated, a subsequent determination of the Thomas Entities' rights with respect to Midway's cash collateral.

12.    On April 20, 2009, the Thomas Entities filed this Motion seeking to appeal the Orders.

**THE THOMAS ENTITIES' QUESTIONS PRESENTED AND RELIEF SOUGHT**

13.    The Motion presents two questions for appeal:

(a)    Whether the Bankruptcy Court erred in finding that AHS was adequately protected when notwithstanding the Court's permitting the Creditors' Committee to spend AHS's cash collateral without limit, the Bankruptcy Court made no findings tied to evidence in the record as to the value of AHS's non-cash collateral and the evidence showed that the Debtors will exhaust their existing cash by July.

(b)    Whether the Bankruptcy Court erred in denying AHS's cross-motion for relief from the automatic stay under section 362(d) when (i) the Debtors admitted that AHS's cash collateral was less than the amount of AHS's claim, (ii) the Debtors admitted they would exhaust the balance of AHS's cash collateral by July if they did not sell AHS's non-cash collateral by that time, (iii) evidence relating to the value of non-cash collateral was limited to speculative purchase offers and an outdated appraisal, and (iv) the Bankruptcy Court made no findings of fact as to the value of the non-cash collateral.[9]

14.    The Thomas Entities seek through this appeal (a) an amendment to the Cash Collateral Order or (b) in the alternative, an order providing the Thomas Entities with

---

[6] *Id.*, ¶4 (emphasis in original).
[7] *Id.*, ¶6 (emphasis added).
[8] *Id.*, ¶9 (emphasis added).
[9] Motion at 7-8.

current relief from the automatic stay to foreclose on the Debtors' assets. The Thomas Entities do not seek to appeal the portion of the Cash Collateral Order providing the Committee with derivative standing to sue the Thomas Entities, among others, on behalf of the Debtors' estates.

15.    Because the Motion fails to establish any ground for appellate review of the Orders, this Court does not have jurisdiction over the Appeal.

### ARGUMENT

I.    **THE THOMAS ENTITIES ARE NOT ENTITLED TO APPEAL THE ORDERS WITHOUT LEAVE FROM THIS COURT BECAUSE THE ORDERS ARE INTERLOCUTORY**

16.    The Thomas Entities claim to have filed a motion for leave to appeal "out of an abundance of caution and only if the district court determines that the Orders are interlocutory in nature, thereby requiring leave to appeal under bankruptcy Rule 8003(a)."[10] In fact, a review of the Orders and the pertinent case law demonstrates that they are interlocutory.

17.    Final orders are appealable as a matter of right, but interlocutory orders may only be appealed with permission from the Court. 28 U.S.C. § 158(a)(1),(3). Although finality is viewed flexibly in bankruptcy cases, "the Third Circuit has been equally emphatic, however, in discouraging piecemeal litigation, even in bankruptcy cases." *In re A.S.K. Plastics, Inc.* ("*A.S.K.*"), No. 04-2701, 2004 U.S. Dist. LEXIS 16922, at *5 (E.D. Pa. Aug. 24, 2004) (citing *In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir. 1988)).[11] Courts typically look to a number of factors to determine if an order is final, including: "(1) the impact of the bankruptcy court's order upon the assets of the bankruptcy estate; (2) the necessity for further fact-finding on remand to the bankruptcy court; (3) the preclusive effect of the district court's decision on the merits of subsequent litigation; and (4) the furtherance of judicial economy." *In*

---

[10] *Id.* at 1.
[11] Unreported cases cited herein are attached as Exhibit B hereto.

*re Edison Brothers Stores, Inc.* ("*Edison*"), No. 96-177-SLR, 1996 U.S. Dist. LEXIS 9061, at *7

(D. Del. June 27, 1996) (citing *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 920 F.2d

1127, 1132 (3d Cir. 1990)).

      18.    Notably absent from the Thomas Entities' Motion is any discussion of

these customary factors. These factors weigh squarely in favor of dismissing the appeal. *First*,

the Orders themselves will have little impact on the assets of the bankruptcy estate. The Orders

effectively preserve the *status quo* by escrowing payments of interest on the cash collateral while

the Court determines the priority of the Thomas Entities' claims through litigation among the

relevant stakeholders in the Bankruptcy. *Second*, any remand to the bankruptcy court will likely

result in additional fact finding to determine the validity, extent, and priority of the Thomas

Entities' claims—which will already be determined by the Bankruptcy Court in an adversary

proceeding. *Third*, similarly, it is unclear what, if any, effect a ruling by this Court would have

on subsequent litigation between the parties. *Fourth*, judicial economy falls squarely in favor of

reserving review of the issues presented on appeal until after an adversary proceeding

determining the validity, extent, and priority of the Thomas Entities' claims is resolved.

Moreover, the Thomas Entities' concerns about the "high risk" that the equity cushion will be

depleted in the interim can be more efficiently resolved by the Bankruptcy Court through a

request for modification of the existing Cash Collateral Order—if and when a need for such

modification can be shown. Indeed, Judge Gross explicitly permitted the Thomas Entities to

seek modification of the Cash Collateral Order.[12]

      19.    Courts that have confronted the issue of whether a conditional cash

collateral order, such as the one at issue here, is final have held that such orders are interlocutory.

*See, e.g, In re NSB Film Corp.* ("*NSB*"), 167 B.R. 176, 180 (B.A.P. 9th Cir.1994). In *NSB*, the

---

[12] *See* Cash Collateral Order, ¶9; *see also* Apr. 6, 2009 Hrg. Tr. 77:1-5.

debtor was a film production company, whose principal assets were intellectual property rights in a library of films, licenses, and claims.  In granting the debtor's cash collateral motion, the bankruptcy court granted the debtor's secured creditor adequate protection in the form of a replacement lien.  The bankruptcy court's order on the cash collateral motion contained a reservation of rights similar to that contained in paragraph 9 of the Cash Collateral Order.  The unsecured creditors' committee appealed the order.

20.     The Ninth Circuit's Bankruptcy Appellate Panel dismissed the committee's appeal, holding that the cash collateral order was interlocutory because it was conditioned on a subsequent determination of the validity, extent, and priority of the creditor's interests and it retained the parties' rights.  *Id.*; *see also A.S.K.*, 2004 U.S. Dist. LEXIS 16922, at *5-6 (a bankruptcy order is "a classic interlocutory decree [if] it is conditioned upon a future occurrence.")

21.     The Orders here are no different than the order appealed by the committee in *NSB*.  As was the case with the order in *NSB*, each of the Orders is expressly conditioned on a subsequent determination of the validity, extent, and priority of the claims and liens asserted by a purported secured creditor.  Here, issues of fact and law regarding the Thomas Entities' claims will be resolved in a subsequent adversary proceeding to be commenced by the Committee in the near term.  As a consequence, the Orders are interlocutory.  *Compare In re Meyertech Corp.*, 831 F.2d 410, 414 (3d Cir. 1987) (holding that an order was final because "a decision now will also preclude the necessity of further activity by the fact-finding tribunal").

## II.     THE THOMAS ENTITIES SHOULD NOT BE GRANTED LEAVE TO APPEAL THE ORDERS

22.     To appeal an interlocutory order, an appellant must establish that: (a) there is a controlling question of law, (b) there are substantial grounds for difference of opinion as to

the controlling question of law, *and* (c) that the appeal materially advances the ultimate

termination of the litigation. 28 U.S.C. § 1292(b). In addition, the appellant must demonstrate

that "exceptional circumstances justify departure from the basic policy of postponing review

until after entry of final judgment." *Edison*, 1996 U.S. Dist. LEXIS 9061, at *10 (citing *In re*

*Delaware and Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d

Cir. 1989)). Even if the Thomas Entities were to establish all of these elements, the District

Court, in its discretion, may still deny the Thomas Entities' Motion. *Bachowski v. Usery*, 545

F.2d 363, 368 (3d Cir. 1976).

        23.    The Thomas Entities claim that an interlocutory appeal here is justified

because the Bankruptcy Court did not make adequate findings that there was a sufficient equity

cushion to protect their alleged secured interest in the Debtors' cash collateral.[13] But the Thomas

Entities below conceded in their pre-hearing briefs and during the hearing that there was, in fact,

an equity cushion.[14] And the Bankruptcy Court heard extensive evidence on the issue of whether

the Thomas Entities were adequately protected by that equity cushion. For instance, Midway's

CFO testified that in addition to the value of the Debtors' non-cash assets, the Debtor had

millions of dollars in cash on hand, and more in receivables and inventory:

> Q [Debtors' Counsel]. Is Midway -- excuse me. Have any parties expressed an
> interest in being a stalking-horse bidder for the sale of assets of Midway?
> A [Ryan O'Desky]. Yes.
> Q. Okay. And do you have an understanding as to how many parties and if any
> have expressed an interest?
> A. Expressed an interest, three.
> Q. Okay. And again, without disclosing the identity or, you know, the specific
> terms, what is the likely value the Debtor anticipates of that stalking-horse bid?

---

[13] Motion at 9-10.

[14] *See Pre-Hearing Statement Acquisition Holdings Subsidiary I LLC* [Docket No. 247], ¶¶19 and 27
("Although the exact value of the collateral has yet to be determined, the parties agree that AHS is
oversecured […] It appears based on the actual bids and the cash on hand that AHS is oversecured […]").

A. The value that we, at right now, would expect it to be would be approximately $30 million for all of the U.S. entities and assets, excluding the cash receivables and inventory on hand.

Q. So that stalking-horse bid would not include what you previously testified would be the 8 to $10 million in cash on hand by the end of May and the 8 to $12 million in accounts receivable?

A. Correct.

Q. Okay. You also mentioned it would not include inventory.

A. Correct.

Q. Again, with respect to the level of interest expressed by parties to be a stalking-horse, how would you describe that level of interest?

A. High interest.

Q. So Mr. O'Desky, if a sale were to be consummated at the end of May, and as to what you've testified, am I correct, we're looking at somewhere in the range of $22 million of cash on hand and strong receivables, plus a minimum of $30 million for the sale price?

A. That's my best estimate.

Q. And that would exclude any revenue that would be generated through the sale of inventory?

A. Correct.[15]

24.    The Bankruptcy Court found that the equity cushion (combined with payments of interest on the Thomas Entities alleged debt into an escrow account) was sufficient to adequately protect the Thomas Entities' interests (whatever they may be).[16] There is no controlling question of law presented here on appeal, the Thomas Entities simply disagree with the factual findings made (at least in part in reliance on the testimony quoted above) by the Bankruptcy Court below.

25.    Moreover, the Thomas Entities incorrect statement that the evidence presented to the Bankruptcy Court suggests that Midway will be "out of cash by July" does nothing to convert the Orders into final orders under the law.  For instance, on its face, the Cash Collateral Order permits the Thomas Entities to "request modification of this Order at a later date."[17] Thus, even if the Thomas Entities were correct that subsequent events could render the

---

[15] *See, e.g.,* Apr. 1, 2009 Hrg. Tr. 59:24-61:7.

[16] Apr. 6, 2009 Hrg. Tr. 76:22-77:5.

[17] Cash Collateral Order, ¶9.

current Cash Collateral Order insufficient to adequately protect their alleged interests, the Cash Collateral Order on its face gives the Thomas Entities the ability to seek modification of the Order in the future.

26.    This appeal now proposed by the Thomas Entities will do nothing to resolve the issues to be litigated in the Bankruptcy Court.  That litigation will turn on the validity, extent, and priority of the Thomas Entities' purported claims and liens against the Debtors' assets.  There is no suggestion that an appeal at this juncture will determine the Thomas Entities' status with respect to Midway's cash (or other) collateral.  Indeed, the primary basis for the appeal is the adequacy of the equity cushion—an issue that is not relevant to the litigation that will be brought in the Bankruptcy Court.  As a result, the appeal will not materially advance the ultimate termination of the litigation between the parties.  *NSB*, 167 B.R. at 180 ("Here, since ultimately there must be a determination as to the status of the Creditors on the collateral, the Panel cannot conclude that […] an immediate appeal would materially advance the ultimate termination of the litigation").

27.    Even assuming, *arguendo*, that all three elements of 28 U.S.C. §1292(b) were satisfied here, this Court should, in the exercise of its discretion, decline to hear the appeal.  An appeal of the issues raised by the Thomas Entities would come at a high price to the estates, but would provide little, if any, value to any of the interested parties.  There will be substantial financial burden to the estates and to the Thomas Entities arising from the additional briefing and argument that the requested appeal would entail.  But this burden is not one that the parties should be required to bear as the Thomas Entities already have a mechanism to obtain a different result if the facts are, in fact, as they suggest—they can simply file a renewed motion with the Court seeking additional protection.  If permitted to go forward, the proposed appeal would only

result in a needless duplication of expense and judicial resources. There is simply no reason to permit a full-blown appeal now, when the Cash Collateral Order itself allows the Thomas Entities to make a renewed application should they determine that subsequent events justify modification of the Cash Collateral Order (in substance the same relief they are seeking on appeal). Accordingly, the Thomas Entities should not be granted leave to appeal the Orders.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that this Court deny the Thomas Entities' Motion in its entirety and grant such other and further relief as is just and proper.

Dated: April 30, 2009
      Wilmington, Delaware

Respectfully submitted,

_____
Mark D. Collins (No. 2981)
Marcos A. Ramos (No. 4450)
Maris J. Finnegan (DE admission pending)
Andrew C. Irgens (No. 5193)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

      -and-

Linda Dakin-Grimm
Gregory A. Bray
David Zolkin
MILBANK, TWEED, HADLEY & MCCLOY
LLP
601 South Figueroa St., 31st Floor
Los Angeles, California 90017
Telephone: (213) 892-4000
Facsimile: (213) 629-5063

*Counsel for the Official
Committee of Unsecured Creditors*

# EXHIBIT A

LA1:#6403048
RLF1-3392205-1

1                IN THE UNITED STATES BANKRUPTCY COURT

2                    FOR THE DISTRICT OF DELAWARE

3    IN RE:                          :
                                     : Chapter 11
4    MIDWAY GAMES INC., et al.,      :
                                     : Case No. 09-10465 (KG)
5          Debtors.                  :
     . . . . . . . . . . . . . . .   :

6
                           Wilmington, Delaware
7                            April 1, 2009
                              10:02 a.m.
8
                         TRANSCRIPT OF HEARING
9              BEFORE THE HONORABLE KEVIN GROSS
                 UNITED STATES BANKRUPTCY JUDGE
10
     APPEARANCES:
11
     For the Debtors:            Michael D. DeBaecke, Esquire
12                               Steven Caponi, Esquire
                                 Victoria Guilfoyle, Esquire
13                               Blank Rome, LLP

14   For Acquisition
     Holdings Subsidiary         Thomas Mores Mayer, Esquire
15   I, LLC                      Gordon Z. Novod, Esquire
                                 Timothy P. Harkness, Esquire
16                               Kramer Levin Naftalis & Frankel, LLP

17                               Laura Davis Jones, Esquire
                                 Pachulski Stang Ziehl & Jones
18
     For Official Committee
19   of Unsecured Creditors:     Daniel M. Perry, Esquire
                                 Linda Dakin-Grimm, Esquire
20                               David B. Zolkin, Esquire
                                 Milbank Tweed Hadley McCloy, LLP
21
                                 Marcos Ramos, Esquire
22                               Richards Layton & Finger, P.C.

23   For UST:                    David L. Buchbinder, Esquire
                                 U.S. Trustee Programs
24                               Department of Justice

25

             Perfect Pages Transcription & Reporting, Inc.
                          (609) 654-8880

59

O'Desky - Direct

1    A.    Correct.

2    Q.    So roughly 20 to $22 million?

3    A.    That's my belief at this point in time.   Yes.

4    Q.    Okay.   With respect to the Debtors' efforts to pursue or

5    consummate a sale or a transaction, have any third parties

6    expressed an interest to Midway in acquiring substantially all

7    or all of its assets?

8    A.    Yes.

9    Q.    Okay.   And again, we've discussed previously with the

10   Court, and I know that there are issues of confidentiality, so

11   I'd like in discussing these bids, not to get in -- to divulge

12   names or specific parties that there may be discussions with

13   or to get too detailed about the transactions, but kind of

14   stay at a higher level.

15   A.    Okay.

16   Q.    Okay?   Roughly, how many parties have expressed an

17   interest in acquiring assets from the Debtor?

18   A.    Parts or all, five.

19   Q.    Okay.   And how would you gauge the level of interest?

20   A.    Strong kind.

21   Q.    Okay.   Are you familiar, I'm sure if you weren't, you are

22   now, with the term, the stalking-horse bidder?

23   A.    Yes.

24   Q.    Okay.   Is Midway -- excuse me.   Have any parties

25   expressed an interest in being a stalking-horse bidder for the

60

O'Desky - Direct

1    sale of assets of Midway?

2    A.    Yes.

3    Q.    Okay.  And do you have an understanding as to how many

4    parties and if any have expressed an interest?

5    A.    Expressed an interest, three.

6    Q.    Okay.  And again, without disclosing the identity or, you

7    know, the specific terms, what is the likely value the Debtor

8    anticipates of that stalking-horse bid?

9    A.    The value that we, at right now, would expect it to be

10   would be approximately $30 million for all of the U.S.

11   entities and assets, excluding the cash receivables and

12   inventory on hand.

13   Q.    So that stalking-horse bid would not include what you

14   previously testified would be the 8 to $10 million in cash on

15   hand by the end of May and the 8 to $12 million in accounts

16   receivable?

17   A.    Correct.

18   Q.    Okay.  You also mentioned it would not include inventory.

19   A.    Correct.

20   Q.    Again, with respect to the level of interest expressed by

21   parties to be a stalking-horse, how would you describe that

22   level of interest?

23   A.    High interest.

24   Q.    So Mr. O'Desky, if a sale were to be consummated at the

25   end of May, and as to what you've testified, am I correct,

O'Desky - Cross

1    we're looking at somewhere in the range of $22 million of cash

2    on hand and strong receivables, plus a minimum of $30 million

3    for the sale price?

4    A.   That's my best estimate.

5    Q.   And that would exclude any revenue that would be generated

6    through the sale of inventory?

7    A.   Correct.

8         MR. CAPONI:  That's all the questions I have at this

9    time.

10        THE COURT:  Thank you, Mr. Caponi.  Ms. Dakin-Grimm

11   or --

12        MR. CAPONI:  I think it's Mr. Harkness.

13        THE COURT:  I'm sorry.  I'm sorry.  Certainly.

14      (Pause in proceedings.)

15        THE COURT:  You may proceed when ready?

16        MR. HARKNESS:  Thank you, Your Honor.

17                  CROSS-EXAMINATION

18   BY MR. HARKNESS:

19   Q.   Good morning, Mr. O'Desky.

20   A.   Good morning.

21   Q.   How are you?

22   A.   Good.

23   Q.   I'm going to try not to replow too much ground here.

24   Let's just go back.  We're going to go through the chronology

25   again, if that's okay with you?

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Case No. 09-10465 |
| | ) | (Jointly Administered) |
| | ) | |
| MIDWAY GAMES, INC | ) | Chapter 11 |
|    Et al | ) | |
| | ) | Courtroom 3 |
| | ) | 824 Market Street |
|       Debtors | ) | Wilmington, Delaware |
| | ) | |
| | ) | April 6, 2009 |
| | ) | 9:06 a.m. |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For Debtor: | Blank Rome LLP |
| | BY:  STEVEN CAPONI, ESQ. |
| | BY:  MICHAEL D. DEBAECKE, ESQ. |
| | 1201 Market Street |
| | Suite 800 |
| | Wilmington, DE  19801 |
| | (302)425-6400 |
| | |
| For Trustee: | U. S. Trustee |
| | BY:  DAVID BUCHBINDER, ESQ. |
| | 844 King Street, Rm. 2207 |
| | Wilmington, DE  19899-0035 |
| | (302)573-6491 |
| | |
| ECRO: | NICKITA BARKSDALE |
| | |
| Transcription Service: | DIAZ DATA SERVICES |
| | 331 Schuylkill Street |
| | Harrisburg, Pennsylvania 17110 |
| | (717) 233-6664 |

Proceedings recorded by electronic sound recording;
transcript produced by transcription service

1   is made of the wrongdoing or the nature that the Committee

2   has put before the Court, whether or not, in effect, the

3   Committee has stated a claim for relief.  And obviously,

4   it's more than a complaint that I'm viewing, which would be

5   the typical manner in which a Court would consider whether

6   or not a claim has been stated because I've received a

7   considerable amount of evidence, as I said.  And based upon

8   the evidence, at the moment, I must tell you that the

9   conscience of the Court is sorely troubled by the facts

10  presented here.

11         We have a situation in which a controlling

12  stockholder -- it is not so much what's happened, which

13  obviously already a concern, but as much what didn't happen

14  that raises the Court's being so troubled.  And what didn't

15  happen is the fiduciaries did not act, at least on the

16  present record, in a manner in which they're expected to

17  act.  They did not consider -- it is not, for example, just

18  to address one of the issues, whether or not those NOLs are

19  still available, but the fact the transactions occurred

20  without investigating whether or not those NOLs might be

21  lost.  It isn't so much whether or not, at the moment,

22  because we don't have a full record on this -- whether or

23  not Midway was insolvent at the time of the February, 2008

24  transactions, but the fact that as we sit here today, we

25  don't know whether it was involved or not.  And a board and

controlling shareholder of National Amusements did not make

an effort to determine whether or not Midway was involved.

It's not so much that the transaction as it was

formulated with acquisition holdings was fair or whether

there were alternative transactions, but the fact that it

wasn't even considered.  And all that leads the Court to

understandably conclude that the Committee's raised

fundamental issues which place the transactions at issue in

serious question.  The fact, for example, that acquisition

holdings for an investment of $100,000 stands before

creditors who invested millions of dollars in Midway is

something that the Court can't ignore.  All of this will

remain to be further flushed out, I recognize, and given the

record and given the debtor's position on what it was

prepared and not prepared to do with respect to further

investigation and further potential litigation, I do find

that the Committee is entitled to derivative standing here,

and in fact, its efforts to date have certainly established

that it is more than capable of bringing these matters to a

final conclusion.

So I am not making findings today, but there has

been a breach of judiciary duty, or that re-characterization

is appropriate.  But I certainly am finding that the

Committee has made a strong prima facie case upon which the

Court can permit the litigation to proceed -- a litigation

to proceed, I should say, since we don't have one on file at

the moment.  And moreover, that certainly clouds the motion

for the use of cash collateral that was presented to the

Court.  I think that the evidence presented certainly

establishes that this is a transaction, a series of

transactions, and a course of conduct which creates serious

issues.

And whether it's Acquisition Holdings, through

Mr. Thomas, selling a house on the eve of his purchase -- I

don't know whether or not Mr. Thomas -- I don't know that

I'm prepared to say that Mr. Thomas is untruthful of

undeserving of credibility at the moment.  It may be just a

matter of exaggeration.  But clearly, that transaction

speaks volumes for Mr. Thomas's state of mind going into the

transaction.  And this is a game company, but that did not

give National Amusement the right to treat a public company

as if it were a toy.  And I think that based upon this

evidence, the Court has to say that that is a matter of

very, very serious concern.  Having said that, the specific

issues on the motion for cash collateral, which are again

impacted by the evidence received, are three-fold.

And the first has to do with the continue --

whether or not the continuing payment of interest should be

permitted and paid into escrow.  And for the same reason

that I believe that acquisition holdings has adequate

protection, mainly that equity cushion, that cash cushion, I

will permit that to proceed, the payment of the interest

into escrow until such time as it is brought to my attention

by motion that the continued payment of interest, even into

escrow, imperils the company.  And so far as the payment of

attorney's fees is concerned into escrow, based upon the

evidence that I have heard today, my very serious concerns,

I am not going to permit the payment of either Mr. Thomas's

or acquisition holdings attorney's fees into escrow.  And I

am surely not going to limit the carve-out for Committee

counsel because on one hand, to grant them standing, and on

the other hand, to deny them their fees would be -- would

make the former, the granting the standing -- the

recognition of standing, I should say.  It would make a

futile act by this Court, and I'm not prepared to do that.

          So with that in mind, I'm a little bit confused

about the debtor's point that we can either have a

consensual use of cash collateral or it can contested use of

cash collateral because I think we've heard all that

evidence, and I must ask, Mr. Caponi, what your position is

on that.

          MR. CAPONI:  Your Honor, the debtor -- I mean, as

of -- if the Court is ordering, essentially, nonconsensual

use, then my concerns have been addressed.  I mean --

          THE COURT:  Okay.

# **EXHIBIT B**



LEXSEE 2004 U.S. DIST. LEXIS 16922



Caution
As of: Apr 30, 2009

**IN RE A.S.K. PLASTICS, INC., et al. Debtors**

**CIVIL ACTION NO. 04-2701**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*2004 U.S. Dist. LEXIS 16922*

**August 24, 2004, Decided**
**August 24, 2004, Filed**

**DISPOSITION:** Appeal from Bankruptcy Court dismissed.

**COUNSEL:** [*1] For SUMMITBRIDGE NATIONAL INVESTMENTS LLC, Appellant: ANDREW J. SOVEN, LEAD ATTORNEY, REED SMITH, LLP, PHILADELPHIA, PA; PETER S. CLARK, DUANE MORRIS LLP, PHILADELPHIA, PA.

For A.S.K. PLASTICS, INC., Debtor-in-Possess: JENNIFER R. HOOVER, ADELMAN LAVINE GOLD & LEVIN, PHILADELPHIA, PA; LEON R. BARSON, PHILADELPHIA, PA.

FREDERICK J. BAKER, ESQ., Trustee, Pro se, PHILADELPHIA, PA.

**JUDGES:** PAUL S. DIAMOND, J.

**OPINION BY:** PAUL S. DIAMOND

**OPINION**

MEMORANDUM

**Diamond, J.**

Debtors, A.S.K. Plastics, Inc., Jamison Plastic Corp., and 9800 Ashton Road, L.P.'s have moved to dismiss the appeal of SummitBridge National Investments LLC from the Order of the United States Bankruptcy Court for the Eastern District of Pennsylvania conditionally granting the Debtors' request for substantive consolidation. I grant the Motion and dismiss the appeal.

**Background**

Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on October 6, 2003. Debtors filed their Joint Plan of Reorganization and their Proposed Disclosure Statement on January 30, 2004. They amended the Joint Plan and, on March 5, 2004, moved for the Entry of an Order Substantively Consolidating the Bankruptcy Estates. [*2] See *11 U.S.C. § 105(a)*. Over SummitBridge's objections, on May 21, 2004 the Bankruptcy Court entered the Order granting the substantive consolidation of all three Debtors subject to and conditioned upon the confirmation of a Chapter 11 reorganization plan. On May 24, 2004, SummitBridge filed its Notice of Appeal of the Order.

It is undisputed that the Debtors' financial affairs are entwined. 9800 Ashton Road owns commercial real estate that is leased to A.S.K. Plastics for use as a warehouse for staging raw materials, work in process, and finished goods. There exist parent and intercorporate loan guarantees, and the companies' internal financial statements are fully consolidated. Further, each company is owned and controlled by one individual, Andrew Vartanian, and the Debtors operate and appear to be a single,

integrated unit. N.T., April 26, 2004 21:1-22:7, 42:18-42:20.

Pursuant to various loan agreements, SummitBridge is a creditor of the Debtors with a total claim of approximately $ 6.7 million. SummitBridge holds a mortgage lien against the commercial real estate owned by 9800 Ashton Road, as well as liens against the real property, machinery, equipment, [*3] inventory, and accounts receivable of A.S.K. Plastics and Jamison. The value of 9800's commercial real estate is $ 775,000, less than thirteen percent of the total value of SummitBridge's collateral of $ 6,069,533. It is clear, and the parties agree, that Debtors are working on thin margins and are trying through reorganization to save the companies and the approximately 100 jobs they provide. Debtors believe that substantive consolidation will eliminate intercompany debt, ensure A.S.K. Plastics' continued use of 9800 Ashton Road's warehouse, improve the chances of the companies' survival, and make more likely confirmation of any reorganization plan. Indeed, the Debtors believe that reorganization cannot be achieved without consolidation. N.T., April 26, 2004, at 68:20-68:22.

From the outset, SummitBridge has objected to the bulk of Debtors' proposals, including the use of cash collateral, requests to employ numerous professionals, Debtors' procedures for interim compensation, Debtors' request for approval of a lease of nonresidential property, Debtors' request for approval of its stipulation with PECO Energy Company, Debtors' request for approval of a form of ballot and proposed [*4] solicitation procedures, and Debtors' proposed and amended disclosure statements. SummitBridge has sought a protective order, relief from the automatic stay, and moved to compel the Debtors to permit access to Debtors' employees, documents, and premises. Following the conditional grant of substantive consolidation, SummitBridge, having filed the instant Appeal, unsuccessfully sought a stay of all reorganization proceedings pending that Appeal. See June 11, 2004 Order of Rufe, J. Denying SummitBridge's Emergency Motion to Stay. The Bankruptcy Court has observed that SummitBridge's litigation tactics "have certainly increased the cost and difficulty of this proceeding." Memorandum Opinion at 10.

## Discussion

SummitBridge argues that under *28 U.S.C. § 158*, it may appeal the Order. That statute provides:

(a) The District Court of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees; (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time

periods referred to in section 1121 of such title; and (3) with leave of court, from other interlocutory [*5] orders and decrees of bankruptcy judges entered in cases and proceedings referred to bankruptcy judges under section 157 of this title.

*28 U.S.C. § 158(a)*.

It is apparent that SummitBridge is incorrect. The Bankruptcy Court's Order is interlocutory, and under *§ 158(a)*, the Court does not have jurisdiction to hear this Appeal.

The Third Circuit has cautioned that in bankruptcy matters District Courts are obligated to balance traditional interpretations of finality with the need to "effectuate a practical termination of the matter." *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp., 920 F.2d 1127, 1132 (3d Cir. 1990)* (internal citations omitted). The Third Circuit has been equally emphatic, however, in discouraging piecemeal litigation, even in bankruptcy matters. See *In re White Beauty View, Inc., 841 F.2d 524, 526 (3d Cir. 1988)* (noting that "inefficient use of judicial resources is as objectionable in bankruptcy appeals as in other fields").

Under no reasonable construction of the law could the Order's *conditional* consolidation be viewed as effectuating a "practical termination" of anything. The Order expressly [*6] provides that it is contingent upon the confirmation of a Chapter 11 reorganization plan that contains an approved form of substantive consolidation. This is a classic interlocutory decree: it is conditioned upon a future occurrence. See *In re American Colonial Broadcasting Corp., 758 F.2d 794, 801 (1st Cir. 1985)*. Should the Bankruptcy Court reject the reorganization plan, that will necessarily dispose of SummitBridge's objections to Debtors' consolidation.

SummitBridge's contention that "the Order is [the Bankruptcy Court's] 'final act' with respect to the issue of substantive consolidation" is, again, incorrect. See SummitBridge's Brief in Response to Debtors' Motion to Dismiss the Appeal at 6, n. 7. The Bankruptcy Court has emphasized the conditional nature of its Order. N.T., May 24, 2004 at 8:10. When a final reorganization plan is submitted to the Bankruptcy Court, SummitBridge is free to object to consolidation. Should the Bankruptcy Court confirm the plan and any consolidation provision in the plan, SummitBridge may appeal that order because it will be a final order. *28 U.S.C. § 158(a)*.

That the May 21st Order allows SummitBridge [*7] to object to the plan of all the Debtors--and not a plan for 9800 alone--hardly results in any cognizable "prejudice"

to Summitbridge warranting immediate appellate review. This is especially so because, as SummitBridge conceded before the Bankruptcy Court, its lien on the 9800 Ashton Road property continues after consolidation, should the Bankruptcy Court allow consolidation. Thus, as the only secured creditor of 9800, SummitBridge agrees that it will recover the full value of its secured interest, regardless of whether or not the Debtors' estates are consolidated. See N.T., April 26, 2004, at 19:15-19:17, 54:20-55:8.

SummitBridge also asks this Court to treat the Notice of Appeal as a motion seeking leave to appeal pursuant to *Rule 8003(c) of the Federal Rules of Bankruptcy Procedure.* In this circumstance, I am obligated to apply the standards enumerated in *28 U.S.C. § 1292(b)* governing interlocutory appeals to the Courts of Appeal from District Court orders. *In re Marvel Entertainment Group, Inc., 209 B.R. 832, 837 (Bankr. D. Del. 1997)* (citing *In re Bertoli, 812 F.2d 136, 139 (3d Cir. 1987)).* [*8] A party may appeal an interlocutory order if the District Court certifies that

> (1) the order from which the appeal is taken involves a controlling question of law; (2) there is substantial ground for difference of opinion as to the controlling question of law; and (3) an immediate appeal may materially advance the ultimate determination of the litigation.

> *28 U.S.C. § 1292(b).*

Further, an appellant must demonstrate "exceptional circumstances [to] justify the hearing of an appeal before a final judgment is rendered." *In re Neshaminy Office Building Associates, 81 B.R. 301, 303 (E.D. Pa. 1987).*

Here, I could not possibly certify that an immediate appeal would materially advance the ultimate determination of this litigation. On the contrary, the piecemeal litigation SummitBridge has pursued would only delay such a determination. Further, there is no controlling legal question as to which there is a substantial ground for difference of opinion. SummitBridge relies here on a Ninth Circuit holding that *unconditional* substantive consolidation is a final, appealable order. See *In re Bonham, 229 F.3d 750 (9th Cir. 2000).* [*9] Again, the Order at

issue here is explicitly conditional. Should the Bankruptcy Court issue a final order that includes substantive consolidation, that will create a controlling legal question that SummitBridge may challenge. In addition, although the Debtors' finances are not as entangled as those of some entities whose consolidation has been allowed in other cases, I cannot conclude that allowing conditional consolidation here creates "exceptional circumstances" and a "substantial ground for difference of opinion." See, e.g., *Nesbit v. Gears Unlimited, Inc., 347 F.3d 72 (3d Cir. 2003)*; *Eastgroup Properties v. Southern Motel Assoc. Ltd., 935 F.2d 245 (11th Cir. 1991).*

Finally, Debtors have suggested that SummitBridge seeks only to encumber this Chapter 11 reorganization and force the Debtors into Chapter 7 liquidation where SummitBridge, as 9800's only secured creditor, could possibly expedite its recovery. N.T., April 26, 2004, at 70:2-70:5. Liquidation of the Debtors--along with the 100 jobs they provide--ultimately may or may not be avoidable here. Any proposed reorganization plan should not, however, die a death from a thousand cuts suffered [*10] through endless motions, objections, and the like intended primarily to create delay and expense. Should the Bankruptcy Court determine that any party is litigating abusively or in bad faith, that Court has appropriate sanctions available to it. See, e.g., *FED. R. BANKR. P. 9011*; *28 U.S.C. § 1927.*

An appropriate order follows.

BY THE COURT:

PAUL S. DIAMOND, J.

Dated: August 24, 2004

ORDER

AND NOW, this 24th day of August, upon consideration of the Debtors' Joint Motion to Dismiss the Appeal of SummitBridge National Investments LLC, SummitBridge's Response, and all related submissions, it is hereby **ORDERED** that the Motion to Dismiss the Appeal is **GRANTED**.

The Clerk of Court shall close this matter for statistical purposes.

PAUL S. DIAMOND, J.

109RS2

********** Print Completed **********

Time of Request: Thursday, April 30, 2009  13:21:43 EST

Print Number:    2861:154566638
Number of Lines: 145
Number of Pages:

Send To:  IRGENS, ANDREW
          RICHARDS LAYTON & FINGER PA
          920 N KING ST
          WILMINGTON, DE 19801-3361



LEXSEE 1996 U.S.DIST. LEXIS 9061



Analysis
As of: Apr 30, 2009

**IN RE: EDISON BROTHERS STORES, INC., et al., Debtors. JONATHAN VIC-
TOR, RICHARD POLAK, and MARTIN KATZ, Appellants, v. EDISON BROTH-
ERS STORES, INC., et al., Appellees.**

**Civil Action No. 96-177-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*1996 U.S. Dist. LEXIS 9061*

**June 27, 1996, Decided**

**DISPOSITION:**    [*1]  The motion to dismiss filed by the Creditors' Committee is denied.

**COUNSEL:** Laura Davis Jones, Esquire, and Joel A. Waite, Esquire, of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware; and Harvey R. Miller, Esquire, and Richard P. Krasnow, Esquire, of Weil, Gotshal & Manges LLP, New York, New York, and D. J. Baker, Esquire, of Weil, Gotshal & Manges LLP, Houston, Texas, attorneys for appellees/debtors.

Jeffrey C. Wisler, Esquire, of Williams, Hershman & Wisler, of Wilmington, Delaware, and Peter D. Wolfson, Esquire, Carole Neville, Esquire, John A. Bicks, Esquire, and Pamela Cohen, Esquire, of Pryor, Cashman, Sherman & Flynn, New York, New York, attorneys for appellants.

Thomas L. Ambro, Esquire, and Deborah E. Spivack, Esquire, of Richards, Layton & Finger, Wilmington, Delaware, and David S. Kurtz, Esquire, Timothy R. Pohl, Esquire, and Sean D. Malloy, Esquire, of Jones, Day, Reavis & Pogue, Chicago, Illinois, attorneys for the Official Committee of Unsecured Creditors of Edison Brothers Stores, Inc.

E. Gordon Robinson, Esquire, and Susan R. Sherrill, Esquire, of U. S. Securities and Exchange Commission, Atlanta Georgia, and Ellen W. Slights, Esquire, Assistant

United [*2]  States Attorney, Wilmington, Delaware, attorneys for U.S. Securities and Exchange Commission.

**JUDGES:** Sue L. Robinson, District Judge

**OPINION BY:** Sue L. Robinson

**OPINION**

*MEMORANDUM OPINION*

Dated: June 27, 1996

Wilmington, Delaware

**Sue L. Robinson, Judge**

**I. INTRODUCTION AND BACKGROUND**

Pending before the court is a motion filed by appellee, the Official Committee of Unsecured Creditors (hereinafter the "Creditors' Committee"), for an order dismissing the appeal of Joseph Harrosh, Jonathan Victor, Richard Polak and Martin Katz (hereinafter the "appellants"), all of whom are non-insider public shareholders of Edison Brothers Stores, Inc. and 65 subsidiaries (hereinafter the "debtors") which filed chapter 11 petitions in this district's bankruptcy court in November 1995. [1] By letters dated November 9 and November 22, 1995, appellants wrote to the United States Trustee requesting that an official equity committee be appointed

pursuant to *11 U.S.C. § 1102(a)*. [2] On December 7, 1995, the United States Trustee declined appellants' request.

> 1    As of the Petition Date, approximately 22,000,000 shares of the debtors' common stock were outstanding. Those shares are widely held by more than 4,000 record holders, and a substantially larger number of beneficial holders.

[*3]

> 2    *Section 1102(a) of the Bankruptcy Code* provides in relevant part that:

> > (1) As soon as practicable after the order for relief under chapter 11 of this title, the United States trustee **shall** appoint a committee of creditors holding unsecured claims and **may** appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate.

> > (2) On request of a party in interest, the court **may** order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee.

> (Emphasis added)

On January 12, 1996, appellants filed a motion with the bankruptcy court requesting the appointment of an official committee of equity security holders. The California Public Employees Retirement System (holding approximately 150,000 shares of the debtors' common stock) and the Securities and Exchange Commission ("SEC") supported the motion. The debtors, the United States Trustee [*4] and the Creditors' Committee opposed the motion.

Hearings on the motion were held by the bankruptcy court on February 29 and March 20, 1996. Appellants asserted to the court that (1) the debtors were not insolvent, (2) the debtors' public shares were widely held, (3) the debtors' chapter 11 cases were complex, and (4) insiders of the debtors could not adequately represent the interest of public shareholders in the chapter 11 cases for conflict of interest reasons. The opponents to the motion argued that the debtors' current and former management could and would provide adequate representation for the debtors' public shareholders, as a result of their ownership of approximately 35% of the debtors' outstanding common shares. The bankruptcy court declined to appoint an equity committee, stating during the course of the hearing the following, *inter alia:*

> * "I'm going to deny without prejudice obviously, because as this case progresses I think there may be an appropriate time for a committee of equity holders . . . ."

> * "If somebody wants to come on with evidence to suggest that [the interests of insider shareholders are not aligned with those of non-insider shareholders,] [*5] I'd be glad to entertain it . . . ."

> * If the petitioning shareholders reach a point where they think that additional facts need to be brought to my attention which would warrant a change of my position, then I would urge them to do so . . . ."

> * "I think that based upon a different posture six months from now [the request to appoint an equity committee] may be an appropriate application . . . ."

(D.I. 16, # 15 at 101, 103, 114, 114-115, respectively)

Appellants thereafter filed a timely appeal to this court. In response to the appeal, the Creditors' Committee filed the pending motion to dismiss the appeal for want of subject matter jurisdiction.

## II. DISCUSSION

As with many bankruptcy cases, it is a difficult task in the case at bar to divine legal principles when dealing with an equitable process revolving around a discretionary matter. Clearly the establishment of an official equity committee pursuant to *11 U.S.C. § 1102(a)* is a discretionary matter, the resolution of which is fact-driven and, therefore, not amenable to any bright line tests. And while the bankruptcy court in this case has expressed its willingness to revisit its order if facts warrant, [*6] the court has conclusively determined that, on the present record, the appointment of an equity committee is not necessary to assure adequate representation of non-insider equity security holders.

To establish that review of the bankruptcy court's decision is appropriate at the present time, appellants must show that the decision is either a final order, an interlocutory order appealable under *28 U.S.C. § 158(a)(3)*, or a collateral order.

### A. Final Orders

This court has jurisdiction to hear appeals "from final judgments, orders, and decrees" of the bankruptcy court. *28 U.S.C. § 158(a)(1)*. Finality is viewed flexibly in the bankruptcy context. *See, e.g., In re Trans World Airlines, Inc., 182 Bankr. 102, 105 (D. Del. 1995)* ("In bankruptcy cases, the courts accord finality a somewhat 'flexible pragmatic definition'") *(citing In re Columbia Gas System, Inc., 146 Bankr. 106, 110 (D. Del. 1992), aff'd, 50 F.3d 233 (3d Cir. 1995)); In re Columbia Gas System, Inc., 182 Bankr. 397 (D. Del. 1995); In re Buckhead America Corp., 180 Bankr. 83, 84 (D. Del. 1995).* The Third Circuit has explained the rationale for viewing finality under a less rigorous standard in [*7] the bankruptcy area as follows:

> Bankruptcy cases frequently involve protracted proceedings with many parties participating. To avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate review of orders that in other contexts might be considered interlocutory.

*In re Amatex Corp., 755 F.2d 1034, 1039 (3d Cir. 1985).* In the Third Circuit, courts typically look to a number of factors to determine if an order is a final order: 1) the impact of the bankruptcy court's order upon the assets of the bankruptcy estate; 2) the necessity for further fact-finding on remand to the bankruptcy court; 3) the preclusive effect of the district court's decision on the merits of subsequent litigation; and 4) the furtherance of judicial economy. *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp., 920 F.2d 1127, 1131 (3d Cir. 1990).*

Appellants do not offer specific arguments that the factors identified in *Allegheny* weigh in favor of finding finality under the circumstances at bar. Instead, appellants essentially argue the merits of the dispute, i.e., [*8] finality should be found (and the order reversed) so that "the debtors' thousands of public shareholders [will not be excluded] from effective participation in the reorganization process including the restructuring of the debtors' business operations, the formulation of the business plan, and the negotiation of a plan of reorganization." (D.I. 15 at 8) With none of the factors even arguably applying, however, and with the only case law directly on point holding contrary to appellants' position, [3] the court concludes that the order in dispute is not final for purposes of an appeal of right pursuant to *28 U.S.C. § 158(a)(1).*

---

3    The United States Court of Appeals for the Second Circuit held in *In re Johns-Manville Corp., 824 F.2d 176, 179-180 (2d Cir. 1987)* that

"orders denying shareholder requests for official committee status" are not final for purposes of appeal because they "do not resolve particular disputes within the overall bankruptcy case; they simply affect the committee structure within which various disputes in the reorganization proceeding will be considered."

[*9] **B. Interlocutory Orders**

*Section 158(a)(3) of Title 28 of the United States Code* gives this court jurisdiction to hear appeals, with leave of court, from interlocutory orders and decrees. In deciding whether an interlocutory order is appealable in the bankruptcy context, courts have typically borrowed the standard found in *28 U.S.C. § 1292(b)*, which governs whether an appeal of an interlocutory order of a district court to a court of appeals is warranted. *In re Delaware and Hudson Ry. Co., 96 Bankr. 469, 472-73 (D. Del.), aff'd, 884 F.2d 1383 (3d Cir. 1989).* Although the concept of finality is accorded some measure of flexibility in the context of *§ 158(a)(1)* appeals, apparently the same standard does not apply in the context of *§ 158(a)(3)* interlocutory appeals. Thus, an appellant must establish that "exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment." *Id. at 473.* Also, under *§ 1292(b)*, an interlocutory appeal will be granted only when the order at issue (1) involves a controlling question of law as to which there is (2) substantial ground for difference of opinion and (3) when an [*10] immediate appeal from the order may materially advance the ultimate termination of the litigation. *Id.*

The court declines to characterize the dispute at bar as presenting "exceptional circumstances" warranting leave to appeal under *§ 158(a)(3)*. Although one might arguably characterize the issue of when it is appropriate to establish an official equity committee as a "controlling question of law," nevertheless the court is not convinced that an immediate appeal in this case will materially advance the ultimate termination of the litigation (as opposed to materially advancing the rights of appellants, as they argue).

**C. Collateral Orders**

The final basis for appellate jurisdiction is the collateral order doctrine. In general, the collateral order doctrine applies to the class of prejudgment orders which "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 430, 86 L. Ed. 2d 340, 105 S. Ct. 2757 (1985) (quoting* [*11] *Cohen v. Beneficial*

*Indus. Loan Corp., 337 U.S. 541, 546, 93 L. Ed. 1528, 69 S. Ct. 1221 (1949)).* For the collateral order doctrine to apply, an order must satisfy three conditions: 1) it must "conclusively determine the disputed question;" [4] 2) it must "resolve an important issue completely separate from the merits of the action;" and 3) it must "be effectively unreviewable on appeal from a final judgment." *Richardson-Merrell, 472 U.S. at 431.*

> 4    Both in their opening and reply briefs, the Creditors' Committee focuses solely on this first condition that must be satisfied if the collateral order doctrine is to apply. The court nevertheless has reviewed the other two conditions.

As noted above, the bankruptcy court has conclusively determined that, **under the facts of record,** it is not necessary to appoint an official equity committee to assure adequate representation in the reorganization process to non-insider equity shareholders. [5] The issue of whether non-insider public shareholders are adequately [*12] represented in the reorganization process is an important issue (as attested to by the interest in these proceedings by the Securities and Exchange Commission) completely separate from the merits of the reorganization. Finally, all parties to this dispute have acknowledged that, at some point in the proceedings, the

opportunity to effectively participate in the reorganization will be lost, thereby mooting the question of official committee status. To decline review of this kind of order in the reorganization context will most certainly engage the court and the parties in a guessing game of when such an issue has been developed enough for review without being mooted by the passage of time.

> 5    The use of the "without prejudice" language is not persuasive in this context, since a change of facts is generally grounds for revisiting a matter.

### III. CONCLUSION

Although the court is cognizant of the long-standing Congressional policy against piecemeal appeals which underlies the final judgment rule, the [*13] court is satisfied that the issue of whether an equity committee should be appointed under the facts of record has been determined in such a fashion that appellate review is warranted under the collateral order doctrine without waiting for any further factual development. Therefore, the motion to dismiss filed by the Creditors' Committee is denied.

An order shall issue.

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 30th day of April 2009, counsel for the

Official Committee of Unsecured Creditors of Midway Games Inc., caused a copy of the

foregoing **Objection of the Official Committee of Unsecured Creditors to Acquisition Holdings**

**Subsidiary I LLC's Motion for Leave to Appeal Under 28 U.S.C. § 158(a)** to be served to the

following listed on Exhibit A either by Hand-Delivery or First Class Mail:

                                        _____
                                        Andrew C. Irgens (No. 5193)

## Exhibit A

BARBEE & GEHRT, L.L.P.
ATTN: JENNIFER A. GEHRT, ESQ.
COUNSEL TO RREEF DOMAIN L.P.
1201 MAIN STREET, SUITE 1910
P.O. BOX 224409
DALLAS, TX 75202-4409

BUCHALTER NEMER
ATTN: SHAWN M. CHRISTIANSON, ESQ.
COUNSEL TO ORACLE USA, INC. AND
ORACLE CREDITOR CORPORATION
333 MARKET STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2126

DEPARTMENT OF LABOR
DIVISION OF UNEMPLOYMENT INS.
4425 N. MARKET STREET
WILMINGTON, DE 19802

FARSIGHT TECHNOLOGIES, INC
JAY PHILLIP OBERNOLTE
611 SPRUCE ROAD
BIG BEAR LAKE, CA 93215-2895

FTI CONSULTING
ATTN: JAROD WADA
ONE FRONT STREET, SUITE 1600
SAN FRANCISCO, CA 94111

HIGHBRIDGE CAPITAL MANAGEMENT
LLC
ADAM J. CHILL
9 WEST 57TY STREET, 27TH FLOOR
NEW YORK, NY 10019

INTERNAL REVENUE SERVICE
INSOLVENCY SECTION
1352 MARROWS ROAD, 2ND FLOOR
NEWARK, DE 19711-5445

J. SCOTT DOUGLAS
909 FANNIN, SUITE 1800
HOUSTON, TX 77010

KELLEY DRYE & WARREN LLP
ATTN: JAMES S. CARR, ESQ.;
GABRIELLE ROHWER, ESQ.
COUNSEL TO WELLS FARGO BANK NA
101 PARK AVENUE
NEW YORK, NY 10178

BLANK ROME LLP
ATTN: MICHAEL D. DEBAECKE
1201 MARKET STREET
WILMINGTON, DE 19802

CONNOLLY BOVE LODGE & HUTZ LLP
ATTN: KAREN BIFFERATO, ESQ.
COUNSEL TO RREEF DOMAIN, LP
1007 NORTH ORANGE STREET
P.O. BOX 2207
WILMINGTON, DE 19899

DEWEY & LEBOEUF LLP
ATTN: FREDERICK KANNER;
TIMOTHY KARCHER;
RICHARD W. REINTHALER
1301 AVENUE OF THE AMERICAS
NEW YORK, NY 10019

FIERST, PUCCI & KANE LLP
FREDERICK U. FIERST, ESQ.
64 GOTHIC STREET, SUITE 4
NORTHAMPTON, MA 01060

FTI CONSULTING
ATTN: JIM DEROSE, DIRECTOR
CORPORATE FINANCE
1001 17TH STREET, SUITE 1100
DENVER, CO 80202

HUNTON & WILLIAMS LLP
COUNSEL TO EPIC GAMES, INC.
ATTN: MICHAEL G. WILSON;
JASON W. HARBOUR
951 EAST BYRD STREET
RICHMOND, VA 23219

INTERNAL REVENUE SERVICE
P.O. BOX 21126
PHILADELPHIA, PA 19114-0326

K&L GATES LLP
MICHAEL J. GEARIN
COUNSEL FOR MICROSOFT
CORPORATION
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104

KRAMER LEVIN NAFTALIS & FRANKEL,
LLP
ATTN: PETER ABRUZZESE, ESQ.; PETER
KOLEVZON, ESQ.;
GORDON NOVOD, ESQ.
COUNSEL TO ACQUISITIONS HOLDINGS
SUBSIDIARY I, LLC

BLANK ROME LLP
ATTN: MARC E. RICHARDS;
PAMELA E. FLAHERTY
THE CHRYSLER BUILDING
405 LEXINGTON AVENUE
NEW YORK, NY 10174

DELAWARE SECRETARY OF STATE
DIVISION OF CORPORATIONS
FRANCHISE TAX DIVISION
PO BOX 7040
DOVER, DE 19903

EPIQ SYSTEMS BANKRUPTCY SOLUTION:
ATTN: DANIEL C MCELHINNEY
757 THIRD AVENUE
NEW YORK, NY 10017

FRANK/GECKER LLP
ATTN: JOSEPH D. FRANK
COUNSEL TO JONES LANG LASALLE
AMERICAS, INC.
325 NORTH LASALLE STREET, SUITE 625
CHICAGO, IL 60654

FTI CONSULTING
ATTN: CHRIS NICHOLLS;
BRUCE BENSON
3 TIMES SQUARE, 10TH FLOOR
NEW YORK, NY 10036

HUNTON & WILLIAMS LLP
COUNSEL TO EPIC GAMES, INC.
ATTN: JOHN BURNS
421 FAYETTEVILLE STREET, SUITE 1400
RALEIGH, NC 27601

INTERNAL REVENUE SERVICE
INSOLVENCY SECTION
DISTRICT DIRECTOR
31 HOPKINS PLAZA, ROOM 1150
BALTIMORE, MD 21201

KELLEY DRYE & WARREN LLP
ATTN: DAVID E. RETTER, ESQ.;
101 PARK AVENUE
NEW YORK, NY 10178-0002

LAZARD FRERES & CO.
ATTN: JEFFREY SECHREST;
BARRY RIDINGS;
30 ROCKEFELLER PLAZA
NEW YORK, NY 10020

## Exhibit A

LAZARD FRERES & CO.
ATTN: ADNAN ZAMAN; A. KAYVON BINA
30 ROCKEFELLER PLAZA
NEW YORK, NY 10020

LINEBARGER GOGGAN BLAIR SAMPSON,
LLP
ELIZABETH WELLER
COUNSEL FOR DALLAS COUNTY
2323 BRYAN STREET, SUITE 1600
DALLAS, TX 75201

MESIROW FINANCIAL CONSULTING, LLC
ATTN: LARRY LATTIG
2828 ROUTH STREET, SUITE 650
DALLAS, TX 75201

MESSANA ROSNER & STERN LLP
ATTN: FREDERICK B. ROSNER, ESQ.
COUNSEL TO TIGON STUDIOS, INC.
1000 N. WEST STREET, SUITE 1200
WILMINGTON, DE 19801

MIDWAY GAMES INC.
ATTN: MATT BOOTY;
RYAN O'DESKY
2704 WEST ROSCOE ST.
CHICAGO, IL 60618

MILBANK, TWEED, HADLEY & MCCLOY
LLP
ATTN: DAVID ZOLKIN;
LINDA DAKIN-GRIMM
601 SOUTH FIGUEROA ST., 30TH FLOOR
LOS ANGELES, CA 90017

MILBANK, TWEED, HADLEY & MCCLOY
LLP
ATTN: GREGORY A. BRAY
1 CHASE MANHATTAN PLAZA
NEW YORK, NY 10005

MULTI PACKAGING SOLUTIONS, INC
WILLIAM H. HOGAN
150 EAST 52ND STREET
NEW YORK, NY 10022

NBA PROPERTIES
HARVEY E BENJAMIN
645 FIFTH AVENUE
NEW YORK, NY 10502

NELSON FELKER TOCZEK DAVIS LLP
GEORGE DAVIS
10880 WILSHIRE BLVD.
SUITE 2070
LOS ANGELES, CA 90024

OFFICE OF THE UNITED STATES TRUSTEE
ATTN: DAVID L. BUCHBINDER, ESQ.
844 KING STREET, SUITE 2313
LOCKBOX 35
WILMINGTON, DE 19801-3519

PACHULSKI STANG ZIEHL & JONES LLP
LAURA DAVIS JONES, ESQ.
TIMOTHY P. CAIRNS, ESQ.
919 N. MARKET STREET, 17TH FLOOR
PO BOX 8705
WILMINGTON, DE 19801

PERDUE, BRANDON, FIELDER, COLLINS &
MOTT, L.L.P.
ELIZABETH BANDA
PO BOX 13430
ARLINGTON, TX 76094-0430

WELLS FARGO BANK, N.A.
JAMES R. LEWIS
45 BROADWAY, 17TH FLOOR
NEW YORK, NY 10006

RICHARDSON INDEPENDENT SCHOOL
DISTRICT
C/O ELIZABETH BANDA
PERDUE, BRANDON, FIELDER, COLLINS &
MOTT, L.L.P.
PO BOX 13430
ARLINGTON, TX 76094-0430

RIDDELL WILLIAMS P.S.
ATTN: JOSEPH E. SHICKICH, JR.
COUNSEL TO MICROSOFT LICENSING, GP
1001 4TH AVE., STE 4500
SEATTLE, WA 98154

SECRETARY OF THE TREASURY
15TH & PENNSYLVANIA AVENUE, N.W.
WASHINGTON, DC 20220

SECRETARY OF THE TREASURY
PO BOX 7040
DOVER, DE 19903

SECURITIES & EXCHANGE COMMISSION
15TH & PENNSYLVANIA AVENUE, N.W.
WASHINGTON, DC 20020

SECURITIES & EXCHANGE COMMISSION
OFFICE OF GENERAL COUNSEL -
BANKRUPTCY
100 F STREET, N.E.
WASHINGTON, DC 20549

SECURITIES & EXCHANGE COMMISSION
ATTN NATHAN FUCHS
233 BROADWAY
NEW YORK, NY 10279

SECURITIES & EXCHANGE COMMISSION
NEW YORK REGIONAL OFFICE
ATTN: MARK SCHONFELD
3 WORLD FINANCIAL CENTER
SUITE 400
NEW YORK, NY 10281-1022

SHEARMAN & STERLING, LLP
SUSAN A. FENNESSEY
599 LEXINGTON AVENUE
NEW YORK, NY 10022

SOLOMON WARD SEIDENWURM & SMITH
MICHAEL D. BRESLAUER, ESQ.
COUNSEL FOR CRYSTAL PIER PARTNERS
L.P.
401 B. STREET, SUITE 1200
SAN DIEGO, CA 92101

STATE OF DELAWARE
DIVISION OF REVENUE-8TH FLOOR
ATTN RANDY R. WELLER - MS #25
820 N. FRENCH STREET
WILMINGTON, DE 19801-0820

SULLIVAN HAZELTINE ALLINSON LLC
WILLIAM D. SULLIVAN, ESQ.
4 EAST 8TH STREET, SUITE 400
WILMINGTON, DE 19801

THE SEAPORT GROUP, LLC
SCOTT FRIEDBERG
360 MADISON AVENUE
22ND FLOOR
NEW YORK, NY 10017

LF1-3392224-1

## Exhibit A

TW TELECOM INC.
ATTN: LINDA BOYLE
10475 PARK MEADOWS DRIVE, #400
LITTLETON, CO 80124

WARNER BROS. ENTERTAINMENT INC.
WAYNE M. SMITH, ESQ.
4000 WARNER BLVD.
BLDG. 156, ROOM 5158
BURBANK, CA 91522

US ATTORNEY GENERAL
US DEPARTMENT OF JUSTICE
MICHAEL B. MUKASEY
950 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20530-0001

INDEPENDENT DIRECTORS OF MIDWAY
GAMES
C/O DEWEY & LEBOEUF
RICHARD W. REINTHALER
1301 AVENUE OF THE AMERICAS
NEW YORK, NY 10019

US ATTORNEY'S OFFICE
ELLEN W. SLIGHTS
1007 NORTH ORANGE STREET
SUITE 700
PO BOX 2046
WILMINGTON, DE 19899-2046

LF1-3392224-1